ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF VIRGINIA, *Appellant*, v. ERNEST AMOS, AS COMPTROLLER OF THE STATE OF FLORIDA, *Appellee*.

En Banc.

Opinion Filed August 1, 1927.

Petition for Rehearing Denied January 12, 1928.

590

*W. E. Kay* and *Doggett & Doggett,* for Appellant;

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for Appellee.

PER CURIAM.—The appellant filed its bill in the Circuit Court for Leon County seeking to enjoin the collection of certain taxes amounting to $83,837.40 assessed against the appellant in favor of certain special school districts, school bonds, special drainage districts, and a special canal district, within the counties over which the line of appellant's railroad runs, the assessment being upon certain classes of property known as "appurtenant supplies," "station operating equipment," and "rolling stock"; such assessment being in addition to an apportionment to each of said *counties of* its proportionate value of such personal property of the appellant subject to taxation in this State. The purpose of the bill was to test the validity of such special taxes assessed for the year 1924. The appellant had paid its state and county taxes for that year on all other property assessed for said year, but refused to pay such special taxes. The court below sustained a demurrer to complainant's bill and denied complainant's application for temporary injunction, and from this decree the complainant appealed.

Appellant contends that at the time these special taxes were assessed, there was no statutory authority under which they could be assessed or levied. This contention involves the construction of Section 747 of the Rev. Gen. Stats., as amended by Chapter 9178 of the Laws of 1923. The effect of the amendment to Section 747, Rev. Gen. Stats., by the Act of 1923 was to make the provisions of such section applicable to certain additional personal property, to-wit: "Shop equipment, tools, stock in warehouse and other personal property used or to be used in connection with the construction, operation or maintenance of the property of

the company," and otherwise left Section 747 as it was. By an Act of 1925 (Chapter 10284), the Act of 1923 (Chapter 9178) was amended and re-enacted so as to manifest the intention to make Section 747 apply also to "special school districts, special road districts, and other special districts that may exist," and the title of the Act of 1923, and of said Section 747, was thereby amended so as to add to the title such new matter. In order to show the terms of Section 747, Rev. Gen. Stats., as amended by the Act of 1923 and as the same stood in the year 1924, and also the significance of the amendatory matter added thereto by the Act of 1925, as bearing upon the construction of the statute before such amendment was added, it is necessary to quote the title and first section of the Act of 1925, placing in italics the amendatory matter injected by the Act of 1925. The title and first section (the other sections not being material here) of said Chapter 10284 of the Laws of 1925, with the new matter italicized, reads as follows:

"*AN ACT to Amend Chapter 9178, Laws of Florida,* Entitled an Act to Amend Section 747, Revised General Statutes of Florida, pertaining to Taxation and the Annual Returns by Railroads, Sleeping and Parlor Car Companies of the Property of Such Companies for Taxation; Providing for the Assessment of Such Property When Proper Return is Made, and Providing for the Apportionment of the Assessment of Such Property to Counties, Municipalities, *Special School Districts and Special Road Districts, and Other Special Districts.*

*Be It Enacted by the Legislature of the State of Florida:*

Section 1. That Chapter 9178, Laws of Florida, entitled 'An Act to amend Section 747, Revised General

Statutes of Florida, pertaining to taxation and the annual return by railroads, sleeping and parlor car companies of the property of such companies for taxation; providing for the assessment of such property when proper return is made, and providing for the apportionment of the assessment of such property to counties and municipalities,' be amended so as to read as follows:

That Section 747, Revised General Statutes of Florida, pertaining to taxation and the annual return by railroads, sleeping and parlor car companies of the property of such companies for taxation be amended so as to read as follows:

747. Annual Return by Railroads, Sleeping and Parlor Car Companies; Failure to Make Returns; Apportionment to Counties and Municipalities, *Special School Districts and Special Road Districts and Other Special Districts*—The president and secretary, or superintendent or manager of the railroad company or street railroad company or sleeping or parlor car company, or the receiver thereof, whose car, track or roadbed, or any part thereof is in this State, shall annually, on or before the first Monday in March, return to the Comptroller of the State, under their oath, the total length of such railroad, the total length and value of such main track, branch, switch and spur track, and side tracks, lots or parts of lots not leased or rented, and terminal facilities, in this State, and the total length and value thereof in each county, city or incorporated town in this State as of the first day of January. They shall also make return of the number and value of all locomotives, engines, passenger, sleeping, freight, parlor, platform construction and other cars and appurtenances (including shop equipment, tools), stock in warehouse and other personal property used or to be used in connection with the construction, operation or main-

tenance of the property of the company, and should any such company or its officers fail to make the returns required by this Act on or before the first Monday in March, when such returns are made, or should any such returns not be made, or should the Comptroller have reason to believe that any return so made does not give a complete and correct value of such railroad property, it is hereby made the duty of the Comptroller, Attorney General, and State Treasurer, after having given not less than five days notice to the person or persons making the return of the time and place of hearing, to assess the same from the best information they can obtain, specifying the value thereof in each county, and the value of the locomotives, engines, passenger, sleeping, parlor, freight, platform construction and other cars and appurtenances—shall be apportioned by the Comptroller *pro rata* to each mile of main track, branch, switch, spur track and side track, and the Comptroller shall notify the county assessor of taxes of each county through which such railroad runs of the number of miles of track and the value thereof, and the proportionate value of the personal property taxable in their respective counties, *special school districts, special road districts, and other special district that may exist,* and he shall notify each incorporated city and town into which said railroad runs of the mileage, apportionment of rolling stock, and other property of said railroad within such city or town, and the value thereof shall be assessed by such city or town as provided by law, and upon the value thus ascertained and apportioned, taxes shall be assessed the same as upon the property of individuals.''

This system of ascertaining and apportioning the value of movable personal property and appurtenances of railroads to the track mileage seems to have been initiated in this State by Section 45 of Chapter 3099 of the Laws of

1879, being the General Revenue Act, approved March 7, 1879, which read as follows:

"That the president and secretary, or superintendent, or manager, of any railroad company, whose track or road-bed, or any part thereof, is in this State, shall annually, on or before the second Monday in July, return to the Comptroller of the State, under their oaths, the total length of such railroads, the total length and value of such roads or lines, including rights of way, road-bed, side track and main track, in this State, and the total length and value thereof in each county, city and incorporated town in this State; they shall also make return of the number and value of all their locomotive engines, passenger, freight, platform, construction and other cars, and appurtenances, and the value thereof shall be apportioned by the Comptroller, *pro rata,* to each mile of main track, and the Comptroller shall notify the assessor of each county through which such railroad runs of the number of miles of track and the value thereof, and the proportionate value of personal property taxable in their respective counties, and to such values thus apportioned the assessor shall add the value of all other real property, together with all fixtures, machinery, tools and other property within their respective counties; and upon the value thus ascertained, taxes shall be assessed the same as upon the property of individuals, and any agent of such company is authorized to pay such tax to the collector, and retain the amount out of any money in his possession belonging to such road."

This law was slightly amended from time to time, largely in matters of detail, but Section 747 of Rev. Gen. Stats. of 1920, before the amendments of 1923 and 1925 above noted, remained substantially the same as Section 44 of the Act of 1887, and Section 47, Chapter 4322, of the Laws of 1895, though minor amendments appear in Chap-

ter 4515, Acts of 1897, Section 8, and Chapter 5596, Acts of 1907, Section 46.

Section 44 of Chapter 3681 of the Laws of 1887 appears to have been the first Act that expressly made it the duty of the Comptroller, in addition to the apportionment to counties, to apportion the value of such personal property among the cities and incorporated towns through which the railroads run, but, while he was required to notify the county tax assessors, nothing was said about his notifying such incorporated cities and towns. This was provided for by a later amendment. However, from the very beginning with the Act of 1879, it was made the duty of railroad companies to make a return of the total length and value of track mileage in each county, city and incorporated town. Nothing was said about special taxing districts until the Act of 1925.

The principle underlying the original Act of 1879 and all subsequent amendments thereof, down to the Act of 1923, seems to have been that of assessing and apportioning the value of the movable personal property to the track mileage, to the several counties and municipalities, in proportion to the length of track located in each, for purposes of taxation by the counties and municipalities, each of said Acts concluding with this language: ''And upon the value thus ascertained and apportioned, taxes shall be assessed the same as upon the property of individuals.'' The manifest meaning of this clause was that after the ascertainment of the value and the apportionment thereof to the counties and municipalities by the named State officers, the proper local tax officials were to complete the process by spreading the same upon the tax rolls and applying the millage, i.e., assessing taxes upon the value, thus ascertained and apportioned, to the railroads, in the same way as upon the property of individuals. Thus

the final step in completing the assessment, and primarily the collection of such taxes, were left to the county and municipal tax officers, though in case of non-payment of such taxes the Comptroller, upon certificate from the county tax collector to that effect, could proceed by warrant to the sheriff to enforce collection under Sec. 753, Revised General Statutes.

At the time the earlier Acts on this subject were adopted, special taxation districts, such as flourish so luxuriantly today, were unknown in this State. It appears that even special district taxes were not inaugurated in this State until after the Constitution of 1885, which expressly authorized them. The county was the unit for state and county assessment purposes, and besides these there were then no other taxes to deal with except municipal taxes. (See Ellis v. A. C. L. R. Co., 68 Fla. 160, 66 So. 1005.) So, at the time the Act of 1879 was adopted, and the several early amendments thereto, the Legislature could hardly be held to have contemplated the subsequent development of these special taxing districts, and the practical and sensible conclusion is that it must have been the intention of the Legislature that this apportionment of the value of personal property to the track mileage as a basis for taxation should be confined to the purposes therein mentioned —taxation by counties and municipalities. And until the Act of 1925 was adopted, although the system evidenced by Section 747 was frequently amended in other respects, we find no amendment attempting to extend such system to other purposes. Since this system originated, there has been superimposed upon the fundamental tax-raising machinery of the counties and municipalities designed for the assessment and collection of taxes for state, county and municipal purposes, the modern superstructure of various special taxing districts, for schools, roads and

bridges, drainage, canals, etc., to impose taxes for special purposes upon the property in such districts, but without any express mention of them in this statute of apportionment until the Act of May 26, 1925, above quoted, was adopted. Whatever may have been the actual motive for this amendment, whether of fear that the statute did not cover a subject that it had been the unexpressed intention to cover, or to so amend it as to extend its operation to new subjects not before thought of or intended, we must look primarily to the language used by the Legislature to determine its intention. And the express mention of these special districts for the first time in the amendatory Act of 1925 is very strong evidence that the Legislature had not theretofore intended by this apportionment statute to apportion such personal property to such special districts for taxation, but had only intended to authorize, and had only actually authorized, apportionment to counties and incorporated cities and towns as expressed in the statute. In the case of State, *ex rel* Triay v. Burr, 79 Fla. 290, 84 So. 61, it was held that, ''Where an amendment is enacted, it must be assumed that a change in the existing law to the extent indicated by the nature of the amendment was intended unless a contrary intent appears from all of the enactments on the subject; and courts should give appropriate effect to the amendment.''

But it is contended in behalf of appellee that, independently of Section 747, as amended by the Act of 1923 above mentioned, the language of the Acts creating or authorizing the creation of such special taxing districts gives them authority to impose taxes upon the personal property of railroads apportioned under the provisions of Section 747. In this connection, appellee calls attention to the fact that Section 16 of Article XVI of the Constitution of 1885, provides that the property of all corpora-

tions shall be subject to taxation unless held exclusively for certain exempted purposes, and that Section 10 of Article XII of such Constitution provides for the division of any county or counties into school districts and for the levying and collection of a district school tax, and that Section 17 of Article XII authorizes the Legislature to provide for special tax school districts for the issuance of bonds and for a tax on the taxable property within said districts. Attention is also called to Section 571, Revised General Statutes, which makes it the duty of the trustees of the special school districts in their annual statement to the Board of County Commissioners, the Comptroller, and County Board of Public Instruction, to state among other things the number of miles of railroad tracks and telegraph lines within the boundaries of such districts. Section 572, Revised General Statutes, which was originally Section 12 of Chapter 4678, Laws of 1889, is also cited. This section makes it the duty of the Comptroller "to assess all railroads and railroad property together with telegraph lines and telegraph property, situated in such special tax school district and to collect the taxes thereon in the same manner as required by law to assess and collect said taxes for state and county purposes, and to remit the same to the treasurers of the counties," to be by them held to the credit of such special tax district fund. Section 593, Revised General Statutes, provides that: "Whenever any special school tax district bonds shall have been issued in pursuance of this article it shall be the duty of the Board of County Commissioners of said county to levy annually a tax upon all real and personal property, railroad, telegraph and telephone lines, owned or situated within said special school tax district," etc. Section 1634, Revised General Statutes, *et seq.*, authorizes the formation of special tax road districts, and Section 1644 provides

*inter alia* that the trustees of special tax road districts in their annual itemized estimates to the Board of County Commissioners, one copy of which is to be furnished to the State Comptroller, shall state "the number of miles of railroad track and telegraph lines within the territorial limits of the special tax road district." Also: "It shall be the duty of the Board of County Commissioners to order the assessor to assess and the collector to collect the amount legally assessed upon the property of the special tax road district, at the rate of millage designated by the Board of Trustees, and pay the same to the county depository; it shall be the duty of the Comptroller of the State to assess all of the railroads and railroad property, together with telegraph lines and telegraph property situated within such special tax road district, and to collect the tax thereon in the same manner as required by law to assess and collect said taxes for state and county purposes, and to remit the same to the depositories of the counties." Section 1656 provides, "That, whenever any special road and bridge district has been constituted and special road and bridge bonds issued by the county commissioners, as provided in this chapter, it shall be the duty of the Board of County Commissioners to assess annually, a tax upon all real and personal property, railroads, telegraph and telephone lines owned or situated wthin the said special road and bridge district, to realize a sum sufficient to pay the interest upon said bonds," etc. It appears from Sections 1107, 1114, and 1138, Revised General Statutes, the part of the chapter regarding the formation of general drainage districts, that taxes thereunder can only be levied against the *lands* within such districts, and the same appears to be true with regard to drainage by counties.

It will be observed from the above statutes that they

*only authorize* the imposition of taxes by special school taxation districts and road and bridge districts upon railroad property *"situated within"* such special districts, though in the case of special school tax district bonds (Section 593, Revised General Statutes), the language is *"owned* or situated within" such special school tax district. However, this slight change in language does not seem to be material here. And as to the provision in Sec. 572, Revised General Statutes, pertaining to special tax school districts, and in Sec. 1644, Revised General Statutes, as to special tax road districts, making it the duty of the Comptroller "to assess all railroads and railroad property, together with telegraph lines and telegraph property, *situated within* such special districts and to collect the taxes thereon in the same manner as required by law to assess and collect said taxes for state and county purposes," this latter clause relates back to and is qualified by the words, "situated within" such special districts. The words "situated within," cannot be construed by this Court to mean "constructively situated within" such districts, but must be given their plain and ordinarily accepted meaning. Nor can we enter the field of conjecture and presume that the language as to the Comptroller being required to "assess" and "collect" taxes thereon "in the same manner as required by law to assess and collect said taxes for state and county purposes," shows an intention to give such districts the power to tax the personal property apportioned under Section 747, for under that section the Comptroller is not given the power to assess or collect taxes for either state or county purposes. It gives the Comptroller, Attorney General and State Treasurer, usually called the Railway Assessing Board, the power of ascertainment or *assessment* of *the value,* both as to realty and personalty, and to the Comptroller the authority to

make the *apportionment*, as to the personalty, but it gives
to neither the power to actually "assess" or "collect" the
taxes upon the same. This Section 747 also deals with taxable property having a situs for taxation actually "within" the counties, municipalities and districts, as well as
that personal property without fixed local situs the value
of which is apportioned. So, from no standpoint it may
be considered, is there anything in Sections 572 and 1644,
Revised General Statutes, that definitely. shows any legislative intention to vest these special tax road and school
districts with authority or power to impose taxes on any
property other than that actually situated within such
districts.

It will have been observed that there is nothing whatever
in Section 593, regarding taxes to pay the interest and
create a sinking fund for the payment of special school tax
district bonds, or in Section 1656, regarding taxation to
pay the interest and create a sinking fund for the payment
of road and bridge district bonds, which could possibly be
construed to tie these sections in with Section 747; nor
does it appear from our general laws that there is the
slightest foundation for the contention that special drainage districts were intended to come within the purview of
Section 747, at least prior to the amendment of 1925, which
we are only considering here in connection with the construction of the meaning and intent of the prior Acts.

We are unable to agree with the contention of appellee
that Section 747, Revised General Statutes, prior to the
enactment of 1925, in and of itself gave any authority for
the assessment and collection of taxes upon apportioned
personal property of railroads for the benefit of any of
the special districts above mentioned. It was evidently
the intention of that statute in the respect here under consideration to apportion described railroad personal prop-

erty to track mileage for the purpose of county and municipal taxation. Nor can we agree that the provisions of said Section 747 had the effect of giving a permanent constructive local situs to the described personal property assessed by the Railway Assessing Board and apportioned by the Comptroller *pro rata* to track mileage, for all taxation purposes, present or prospective. This was probably within the legislative power, but it did not so provide. On the contrary, it expressly stated the particular taxation purposes to which the apportionment should extend. If indeed this statute, providing as it does for an annual return, assessment and apportionment of railroad personal property to the track mileage located in the counties and municipalities, newly made each year, could be construed as creating a constructive situs of such personalty for local taxation for the purposes and by the local taxing units named in the Act, it would be going too far to constructively extend such constructive situs for purposes and to taxing units not named in the Act. The property dealt with here is not *actually situated* in such counties and municipalities; it, or its apportioned value, is only *constructively* put there by this statute for certain named purposes, and it is not constructively there for any other purposes. Certainly, for instance, it is not there for attachment, levy or sale under legal process in actions at law, nor for any other purpose or purposes other than those expressly designated by legislative enactment. And in construing taxation statutes, which must be construed strictly in favor of the tax payer, a constructive situs created by statute for one purpose will not be extended by construction to or for another purpose.

In considering these questions, we have taken into account certain propositions of law, most of which are set

forth in briefs of counsel. It might be well to here state some of them.

The power of the Legislature, where there is no constitutional provision prohibiting it, to apportion the value of railroad personal property, such as that described in said Section 747, to the track mileage for purposes of local taxation, is well recognized. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Cooley on Taxation, 4th Ed., Sec. 454; Columbus Southern Railway Co. v. Wright, 151 U. S. 470, 38 L. Ed. 238.

The general rule is that the situs of personal property for the purpose of taxation is primarily at the domicile of the owner, subject to certain exceptions, such as the acquisition of a fixed situs different from that of the owner. 26 R. C. L. 273, 278; Hunt v. Turner, 54 Fla. 654, 45 So. 509. In keeping with this general rule it was said, in State v. Beardsley, 77 Fla. 803, 82 So. 794, that: "It is essential to the power of taxation that either the owner of personal property be a resident or the property be situated within the district attempting to exercise the power to tax." See also N. Y. Cent. R. R. Co. v. Miller, 202 U. S. 594.

"So far as the place within the state where rolling stock may be taxed is concerned, it is taxable, unless it is otherwise provided by statute, only at the principal office or place of business of the corporation; the statutes often apportion the rolling stock among the several counties through which the road passes, in proportion to the mileage in each county, for such legislation is within the power of the Legislature." 2 Cooley on Taxation, 4th Ed., p. 1003.

"Assessment, in its limited sense, does not comprehend the entire process by which taxes are imposed, from the inception to the conclusion. In its limited sense, it is the

process by which persons subject to taxes are listed, their property described, and its value ascertained and stated. * * * A 'levy' of taxes is distinguished in that a levy is a legislative function, and declares the subjects and rate of taxation." Cooley on Taxation, Secs. 16, and 1012; L. & N. R. Co. v. Board of Public Instruction, 50 Fla. 222, 39 So. 480.

"A specially created district has no inherent power to tax. It has no power to tax except in so far as the power is clearly indicated." Cooley on Taxation, Sec. 130.

"No tax shall be levied except in pursuance of law." Sec. 3, Article IX, Constitution of 1885.

Statutes conferring authority to impose taxes must be construed strictly in favor of the tax payer and against the grantee of the power. Cooley, Taxation, Sec. 503; *Ex parte* Sims, 40 Fla. 432, 25 So. 280; Moseley v. Tift, 4 Fla. 402.

It is an elementary rule of taxation that when the state prescribes how or to whom property shall be assessed, assessment in any other manner or to any other person is void, and creates no lien upon the property. State v. Beardsley, 77 Fla. 803, 82 So. 794.

There is a Texas case, decided in 1919, which is quite closely in point to the case at bar. It is the case of State v. Houston & T. C. Ry. Co., 209 S. W. 820. The question before the court was whether or not the Harris County Ship Channel Navigation District had the power to tax the value of railroad rolling stock and intangible property apportioned by a state board to the tax assessor of Harris County. Some of the headnotes to that case read as follows:

"The 'Harris County Ship Channel Navigation District of Harris County,' though having the same boundaries as

Harris County, has no power of taxation, except such as is expressly conferred upon it by the law of its creation.

"The law conferring upon a navigation district the power of taxation will be strictly construed.

"The grant of taxing power to any county or district by the Legislature should be construed with strictness, the presumption being that the Legislature has granted in clear terms all it intended to grant.

"Since railroad's rolling stock and intangible assets have no actual situs in any particular county or district, it is within the lawful power of the Legislature to determine whether such property shall be embraced within the limits of a taxing district, and whether it shall be taxed for the purposes of such district."

"Navigation district having power to tax property 'within said * * * district' has no power to tax rolling stock and intangible assets of railroad, such property not being within said district, in view of Const. Art. 8, Secs. 8, 11, and Rev. St. 1911, Art. 7525, being property of such character that it has no actual situs, and not being physically within such district.

"Acts 30th Leg. (First Called Sess.) c. 17, authorizing county tax officers to include the intangible values in the values fixed on the tangible property, did not have the effect of fixing a situs for rolling stock and intangible assets of railroad company.

"Navigation district's power to 'tax property within said navigation district, whether real, personal, mixed, or otherwise,' gives district no power to tax intangible assets and rolling stock of railroad upon theory that the term 'mixed or otherwise' gives such authority, for such words relate back to, and are qualified by, the words 'property within said navigation district.' "

The principal announced in the above case was again

considered in the later case of Bell County v. Hines, Director General, 219 S. W. 556, where the court upheld the right of the county under statutory authority to make such an assessment for payment of interest, etc., on road bonds, as distinguished from the right of a special taxing district which had not been vested with such authority by express legislative authorization.

For the reasons above pointed out, the decree of the court below sustaining the demurrer to complainant's bill and denying the application for temporary restraining order must be reversed, and the cause remanded for further proceedings in harmony with this opinion.

Reversed.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur.

WHITFIELD, J., dissents.

BUFORD, J., disqualified.

TERRELL, J., not participating.

WHITFIELD, J., dissenting:

The Constitution commands that "The Legislature shall provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal,. excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes," and that "all property shall be taxed upon the principles established for State taxation." Sec. 1 as originally adopted, and as amended in 1924, and Sec. 5, Art. IX Const.

Special Tax School District taxes are required to be levied "on the taxable property within the district." Sec. 17, Art. IX, and as amended, see Acts 1923, page 4845, Sections 571, 593, Revised General Statutes.

Special Tax Road District taxes are required to be assessed and collected upon the taxable property within the special tax road district, and it is expressly provided that "it shall be the duty of the Comptroller of the State to assess all of the railroads and railroad property, together with the telegraph lines and telegraph property situated within such special tax road district, and to collect the taxes thereon in the same manner as required by law to assess and collect said taxes for state and county purposes, and to remit the same to the depositories of the counties." Sec. 1644, Revised General Statutes, 1920.

Special Road and Bridge District taxes are assessed "upon all real and personal property, railroads, telegraph, and telephone lines owned or situated within the said special road and bridge district." Sec. 1656, Revised General Statutes, 1920. See also Sec. 1741, Revised General Statutes, 1920.

Where personal property is in a state, its *situs* for purposes of taxation may be regulated by statute when no organic provision is thereby violated to the injury of the tax payer. The organic property rights of a railroad company are not violated by a statute that requires the company's personal property to be apportioned over its entire line in the state for purposes of taxation.

The state may, for the purposes of taxation, distribute the value of a railroad company's rolling stock and other personal property located within the state, among the counties and other governmental subdivisions of the state traversed by the railroad, according to the track mileage of the company in each such governmental subdivision,

where there is no abuse of sovereign power in making such distribution so as to violate organic property rights. See Columbus Southern Ry. Co. v. Wright, 151 U. S. 470, 14 Sup. Ct. Rep. 396.

The statute provides that for purposes of taxation the rolling stock and other personal property of a railroad company in this State "shall be apportioned by the Comptroller *pro rata* to each mile of main track, branch, switch, spur track or side track, and the Comptroller shall notify the county assessor of taxes of each county through which such railroad runs of the number of miles of track and the value thereof, and the proportionate value of the personal property taxable in their respective counties, * * * and upon the value thus ascertained and apportioned, taxes shall be assessed the same as upon the property of individuals." Chap. 9178, Acts of 1923. See also Sec. 1644, Revised General Statutes, 1920.

Under the statutory system of assessing railroad property, the amount of rolling stock and other personal property of a railroad company that is duly apportioned by the Comptroller upon the track mileage, becomes a part of the track assessment valuation where the track is located; and where a railroad track is in a district, the track together with its apportioned *pro rata* of the company's rolling stock and other personal property, constitute in law "property within the district" that is required by law to be assessed for district purposes. If this is not so, the property is not "taxed upon the principles established for State taxation," and there is not "a uniform and equal rate of taxation," or "a just valuation of all property" subject to be taxed, that is expressly required by the Constitution. The intent of the statutory provisions is that they shall be so interpreted and applied as to comply with and effectuate the quoted organic com-

mands; and the language used in the several statutes is sufficient to require the assessment of railroad tracks located in a district to include the duly apportioned rolling stock and other personal property allocated to such tracks.

The mere failure of the statute to require the Comptroller to notify the county tax assessors of the track mileage and the proportionate value of the rolling stock and other personal property that he has apportioned *pro rata* to each mile of track in the special school, road or other districts in the respective counties, does not affect the statutory provisions that require the duly apportioned part of the railroad company's rolling stock and other personal property to be made a part of the assessment of the company's track mileage in the districts. The statute requires the Comptroller to apportion the rolling stock and other personal property of a railroad company *pro rata* to each mile of track and to notify the assessors "of the number of miles of track and the value thereof, and the proportionate value of the personal property *taxable in their respective counties.*" If this is sufficient information for the assessor to make an assessment of railroad tracks according to mileage in a district, the assessment under the statute includes "the proportionate value of the personal property taxable" to each mile of track. The statute makes the combined values taxable *in* the county, not taxable for state and county purposes alone.

The opinion of the Circuit Judge herein is as follows:

"This cause coming on to be heard upon the application of the complainant for a temporary restraining order against the defendant and upon the demurrer of defendant to the bill of complaint, and the same having been argued by counsel for the respective parties, and the Court being now advised as to its opinion, found that the complainant in and by its said bill seeks to enjoin the enforcement by

the defendant of certain Special District taxes, for 1924, imposed in a number of counties throughout the State upon certain property of complainant, which property it is alleged in the bill was not situated in any of said Special Districts and was not subject to taxation in such districts.

"It is alleged in the bill that the Railway Assessing Board of the State assessed the property of complainant subject to taxation in Florida, and that the Comptroller apportioned the value of the personal property so assessed *pro rata* to each mile of track of complainant, located in the State. Complainant contends that while Chap. 9178 of the Acts of 1923, may confer upon the Railway Assessing Board the power to assess railroad property and upon the Comptroller the power to apportion the value of the personal property so assessed, *pro rata* to each mile of railroad as far as the State, counties and municipalities affected are concerned, yet because the Act does not specify or allude to Special Districts, such apportionment is not authorized for taxable purposes in such Special Districts.

"Chapter 9178 provides, First, for the assessment by the Railway Assessing Board of the State of all railroad properties therein specifically mentioned, which it held to mean officially estimating the value of such property as a basis for taxation within the State.

"Second, this assessment having been made, the Comptroller is charged with the duty of apportioning the value of the personal property so assessed *pro rata* to each mile of railroad track. Thus, in effect, and for purposes of taxation, valuing all of the property of a railroad, used for railroad purposes, as a unit, and apportioning that value on a mileage basis, with the result that each mile of railroad track has a fixed and officially estimated value for purposes of taxation, wherever in the State it may be located.

"Third, such apportionment having been made, the Act further imposes upon the Comptroller the duty of the county assessor of taxes of each county and each municipality through which a railroad runs of the number of miles of track and the value thereof and the proportionate value of the personal property so apportioned to such mileage.

"Such Act made no provision for charging or authorizing the Comptroller to notify any official of the mileage of railroads in a Special Taxing District, its value or the value of taxable personal property apportioned *pro rata* to each mile of track as it does in the case of counties and muinicipalities. However, the value of such property has been duly fixed, that is assessed for purposes of taxation and there is no authority in any county or Special Taxing District to change such assessment, the statute leaving to the proper county officials the burden of ascertaining the miles of railroad track in each Special Tax District and the values thereof as fixed by the Railway Assessing Board of the State, including the added value accruing by reason of the pro-rated personal property valuation apportioned to each mile of track. The railroad property subject to taxation having been duly assessed by the Assessing Board, its estimated value officially fixed for the purposes of taxation, and the value of the personal property apportioned as provided by the Act, such value attaches to each mile of railroad track in each Special Taxing District as well as out of such district. It remains for the proper county officials to ascertain in the most practical and feasible manner the mileage of railroad track in each Special Taxing District, its value as officially estimated for purposes of taxation by the proper State officials, including the value of the personal property apportioned to such mileage. There was nothing in the Act specially providing for the method of obtaining such in-

formation, but if it is supplied by the Comptroller of the State, provided it is correct, there is no valid ground for complaint because he did so, even though it is not made his special duty by the statute to do so. The taxes on railroads are not levied by the Comptroller or the Railway Assessing Board, but by the Legislature and the county officials on the property of a railroad at its asssessed value, as officially fixed and apportioned by the proper authorities.''