TAMPA SOUTHERN RAILROAD CO. v. CITY OF BRADENTON.

165 So. 679.
Division A.
Opinion Filed October 3, 1935.
On Rehearing January 13, 1936.
Second Petition for Rehearing Denied February 13, 1936.

*W. E. Kay* and *T. Paine Kelly,* for Appellant;

*John B. Singeltary* and *Dewey A. Dye,* for Appellee.

BUFORD, J.—The appeal here is from an order in favor of the complainant below in a suit instituted by a bill in chancery to foreclose an alleged lien upon the property of the defendant for certain delinquent unpaid taxes.

The record shows that for the years 1925, 1926, 1927, 1928 and 1929 the Comptroller of the State of Florida made return to the City Clerk of the City of Bradenton, who was the duly authorized Tax Assessor of said City, of the valuation of the property of the defendant Tampa Southern Railroad Company located within the territorial limits of said municipality, as follows:

"For the year 1925:

| | |
|---|---|
| 1.17 miles of main track, at $6,500.00 per mile | $7,605.00 |
| 1.39 miles side track, at $2,000.00 per mile | 2,780.00 |
| Terminal facilities | 5,000.00 |
| Total | $15,385.00 |

"For the year 1926:

| | |
|---|---|
| 1.17 miles of main track, at $6,500.00 per mile | $7,605.00 |
| 1.39 miles side track, at $2,000.00 per mile | 2,780.00 |
| Terminal facilities | 5,000.00 |
| Total | $15,385.00 |

"For the year 1927:

| | |
|---|---|
| 1.17 miles main track, at $6,500.00 per mile | 7,605.00 |
| 1.63 miles side track, at $2,000.00 per mile | 3,260.00 |
| Terminal facilities | 5,000.00 |
| Total | $15,865.00 |

"For the year 1928:

| | |
|---|---|
| 1.17 miles main track, at $6,500.00 per mile | 7,605.00 |
| 1.63 miles side track, at $2,000.00 per mile | 3,260.00 |
| Terminal facilities | 5,000.00 |
| Total | $15,865.00 |

"For the year 1929:

| | |
|---|---:|
| 1.17 miles main track, at $7,500.00 per mile.... | 8,775.00 |
| 1.63 miles side track, at $2,000.00 per mile.... | 3,260.00 |
| Pro rata value Appurtenant Supplies...................... | 384.00 |
| Pro rata value Rolling Stock..................................... | 5,271.00 |
| Terminal facilities................................................... | 5,000.00 |
| Total.............................................. | $22,690.00 |

"For the year 1925, the City Clerk, as Tax Assessor, placed upon the same properties for the purpose of taxation, the following valuation:

| | |
|---|---:|
| 1.17 miles main track, at $87,360.00 per mile.... | $102,211.20 |
| 1.39 miles side track, at $26,880.00 per mile.... | 37,363.80 |
| Terminal facilities.................................................. | 67,200.00 |
| Total.............................................. | $206,775.00 |

"For the year 1926 the City Clerk, as Tax Assessor, placed upon the same properties for the purpose of taxation, the following valuation:

| | |
|---|---:|
| 1.17 miles main track, at $86,821.15 per mile.... | $101,580.75 |
| 1.39 miles side track at $26,714.20 per mile.... | 37,132.74 |
| Terminal facilities.................................................. | 66,785.50 |
| Total.............................................. | $205,498.99 |

"For the year 1927 the City Clerk, as Tax Assessor, placed upon the same properties for the purpose of taxation, the following valuation:

| | |
|---|---:|
| 1.17 miles main track at $62,465.00 per mile.... | 73,000.00 |
| 1.63 miles side track at $19,220.00 per mile.... | 31,000.00 |
| Terminal facilities.................................................. | 48,000.00 |
| Total.............................................. | $152,000.00 |

"For the year 1928 the City Clerk, as Tax Assessor, placed upon the same properties for the purpose of taxation, the following valuation:

| | |
|---|---|
| 1.17 miles main track at $62,465.00 per mile.... | 73,000.00 |
| 1.63 miles side track, at $19,220.00 per mile.... | 31,000.00 |
| Terminal facilities | 48,000.00 |

Total........$152,000.00

"For the year 1929, the City Clerk, as Tax Assessor placed upon the same properties for the purpose of taxation, the following valuation:

| | |
|---|---|
| 1.17 miles main track at $50,000.00 per mile.... | 58,500.00 |
| 1.63 miles side track at $15,000.00 per mile.... | 24,500.00 |
| Pro rata value Appurtenant Supplies | 300.00 |
| Pro rata value Rolling Stock | 5,000.00 |
| Terminal facilities | 33,300.00 |

Total........$121,600.00"

The record discloses that the assessed valuation fixed by the Tax Assessor of the City of Bradenton was arrived at by separately evaluating each lot or tract of land upon which the railroad line was constructed at a value such as was placed upon other parcels of land in the same locality like situated and of similar area and used for purposes other than railroad purposes. That after evaluating in this way each of the various lots or parcels of land he then added these separate evaluations and thereby arrived at a total valuation of all of the land used and occupied by the railroad company for operating purposes. He then added what he conceived to be the value upon the building structures and other improvements located upon the lands and thereby arrived at a total valuation which he determined

to be the valuation of all the property for taxation purposes. He then divided his total thus secured by the total valuation returned to the City by the Comptroller placed upon the same property including roadbed, track materials, buildings, terminals, and structures. By this process he arrived at a quotient which he used as a ratio to increase the valuation returned to the City by the Comptroller upon the properties involved.

We are not advised why he pursued this course.

The defendant in the court below, appellant here, contended in the court below, and contends here, that the assessment was invalid, but the defendant offered to pay whatever tax should be found to be due on its said property based upon a just valuation of said property and a uniform and equal rate of taxation.

In the case of Ellis v. A. C. L. Railway Company, 68 Fla. 160, 66 Sou. 1005, we held:

"The requirement that the Comptroller shall notify a municipality of the mileage, apportionment of rolling stock and other railroad property 'within such city or town and the value thereof shall be assessed by such city or town as provided by law, and upon the value thus ascertained and apportioned taxes shall be assessed the same as upon the property of individuals,' permits the municipality to make its own valuations upon the railroad property of which it is so notified by the Comptroller as being within the city, if authorized to do so by the charter or other statute, provided 'a just valuation of all property' subject to the municipal tax is made. If other property in the city is assessed on a valuation different from that fixed for State and county purposes, the value of railroad property in the city may be correspondingly valued for municipal taxation. This does not authorize the municipality in making assess-

ments of property of which it has been notified by the Comptroller to separate the lots and terminal facilities from the tracks in the city, when the State authorities have added the value of the lots and terminal facilities to the tracks as assessed for State and county purposes. The values of the railroad property as listed and reported to the city may be changed to correspond with other assessment values in the city, but 'the principles established for State taxation' should be observed as commanded in the Constitution."

In the case of City of Bradenton v. S. A. L. Ry. Co., 100 Fla. 606, 130 Sou. 21, in considering the assessment there under consideration, we said:

"The record in this case shows that the city tax assessor arrived at his evaluation of the railroad property assessable within the city limits not by any comparison with other property used for railroad purposes in the same manner in which this property was used, but by fixing a like valuation on the railroad property as was fixed upon and assessed against other property adjacent thereto and used for other purposes. It does not appear that the assessor took into consideration the fact that the railroad company is limited to the use of its property for railroad purposes only, and that in its use of such property it is bound and circumscribed by the laws of the State and Federal Government regulating such use.

"The figures adopted by the city assessor show that he placed an evaluation on railroad main line at the rate of $118,375.25 per mile and upon side tracks at approximately $86,000.00 per mile. This evaluation is upon its face grossly excessive."

It is not necessary for us to repeat more of what we said in the opinion in the case of City of Bradenton v. S. A. L. Ry. Co., *supra,* but it is needful that we now go fur-

ther and in addition to what was said there, make the following observations:

Sections 1 and 5 of Article IX of the Constitution of Florida provide as follows:

"Section 1. The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property, but such special rate or rates shall not exceed five mills on the dollar of the assessed valuation of such intangible property, which special rate or rates, or the taxes collected therefrom, may be apportioned by the Legislature, and shall be exclusive of all other State, county, district and municipal taxes; and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.

"Section 5. The Legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes; and all property shall be taxed upon the principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits. The Legislature may also provide for levying a special capitation tax, and a tax on licenses. But the capitation tax shall not exceed one dollar a year and shall be applied exclusively to common school purposes."

When these two sections are taken together they mean that a municipality may make its own assessments not exceeding the actual value of the property, provided the method of assessing the same and the manner of arriving at the value of the property is arrived at by the application of the same principles which are required to be pursued in

making assessments for State and county purposes. When so construed there is no conflict in the provisions.

The provision in Section 5 that "all property shall be taxed upon the principles established for State taxation" requires incorporated cities and towns to adopt and use the principles which are established by law for State taxation in the assessment and levy of taxes for municipal purposes. The principles for taxation of railroad properties for State purposes are definitely established by the provisions of Section 46, Chapter 5596, Acts of 1907, and amendments thereto now appearing as Section 960 C. G. L. of Florida, which reads, in part, as follows:

"The president and secretary, or superintendent or manager of the railroad company or street railroad company or sleeping or parlor car company, or the receiver thereof, whose car track or roadbed, or any part thereof is in this State, shall annually, on or before the first Monday in March, return to the Comptroller of the State, under their oath, the total length of such railroad, the *total* length and *value* of such main track, branch, switch and spur track and side tracks, lots or parts of lots not leased or rented; and terminal facilities in this State and the total length and value thereof in each county, city or incorporated town in this State as of the first day of January. They shall also make return of the number and value of all locomotives, engines, passenger, sleeping, freight, parlor, platform construction and other cars and appurtenances (including shop equipment, tools), stock in warehouse and other personal property used or to be used in connection with the construction, operation or maintenance of the property of the company, and should any such company or its officers fail to make the returns required by this law on or before the first Monday in March, when such returns are made, or should any such

returns not be made, or should the Comptroller have reason to believe that any return so made does not give a complete and correct value of such railroad property, it is hereby made the duty of the Comptroller, Attorney General and State Treasurer, after having given not less than five days' notice to the person or persons making the return of the time and place of hearing, to assess the same from the best information they can obtain, specifying the value thereof in each county, and the value of the locomotives, engines, passenger, sleeping, parlor, freight, platform, construction and other cars and appurtenances—shall be apportioned by the Comptroller pro rata to each mile of main track, branch, switch, spur track and side track, and the Comptroller shall notify the county assessor of taxes of each county through which such railroad runs of the number of miles of track and the value thereof, and the proportionate value of the personal property taxable in their respective counties, special school districts, special road districts, and other special districts that may exist, and he shall notify each incorporated city and town into which said railroad runs of the mileage, apportionment of rolling stock, and other property of said railroad within such city or town, and the value thereof shall be assessed by such city or town as provided by law, and upon the *value thus ascertained* and *apportioned,* taxes shall be assessed the same as upon the property of individuals." (Italics supplied.)

The principle of taxation established in this regard is that, first the trackage of a railroad is to be considered as an entirety and that taxes are to be assessed upon a unit basis, the entire trackage constituting or representing the unit of track miles, and proportionate parts thereof lying in each taxing district constitute a unit for taxation in the respective taxing district which may be the county, any special tax

district or municipality. To preserve and adhere to the "principles established for State taxation," it is necessary for the municipality to either accept the valuations fixed by the State Comptroller insofar as main track, branch, switch, spur track and side track and proportionate part of personal property apportioned to trackage is concerned, or else make its own assessments of that property by applying the same principles in arriving at the value of such property within and apportionable to the municipality which are required to be pursued by the provisions of Section 747 R. G. S., as amended and brought forward as Section 960 C. G. L. Provided, of course, that if the assessed value as fixed by the Comptroller is less than the full cash value as determined by the Comptroller, the municipality may in making its assessment of the railroad property fix the assessed value at the same proportion of the full cash value which it applies to the assessment of other property in the municipality. In all events, the assessment must be made so as to preserve the principles of uniform assessment on the mile unit basis. See Ellis v. A. C. L. Ry. Co., *supra.*

In the case of People v. Ill. Central R. R. Co., 307 Ill. 265, 138 N. E. 593, it was said:

"Under Sections 42 and 43 of the Revenue Act, railroad track is to be listed and taxed in the several counties, towns, villages, districts and cities in the proportion that the length of the main track in such county, town, village, district or city, bears to the whole length of the road in this State. The relative value of the lands in the different localities over which a railroad track is laid is not to be considered in assessing the track; but the track, as a whole, is a single property, not to be assessed upon any higher valuation per mile in one locality than in another. Law v. People, 87

Ill. 385; People v. Illinois Northern Railway, 248 Ill. 532, 94 N. E. 37."

It is clear that the required principles of taxation were not adhered to in making of assessments herein involved insofar as the same applied to the assessment of main track and side track. It is also clear that those assessments as to terminal facilities possessed the same infirmities which were pointed out as such in the assessments involved in the case of City of Bradenton v. S. A. L. Ry. Co., *supra,* in that, "it does not appear that the assessor took into consideration the fact that the railroad company is limited to the use of its property for railroad purposes only and that in its use of such property it is bound and circumscribed by the laws of the State and Federal Government regulating such use."

We are not unmindful of the fact that the city assessor testified that he reduced the values which he deemed full cash value by about forty per cent. on account of the property being used for railroad purposes. Yet the fact remains that the record shows that the value assessed on terminal facilities fluctuated from $67,200.00 in 1925 to $33,300.00 in 1929, which fact on its face shows that investment or speculative value was more in mind than the value for the limited and legally required purposes of railroad operation.

For the reasons stated, the decree should be reversed and the cause remanded with directions that the Chancellor do ascertain from the testimony already taken, and such other testimony which he may deem to be necessary in connection with the testimony already taken, the true amounts of the assessments which could have been legally made by the assessing officers of the municipality in accordance with the views herein expressed, and decree a lien to exist against

the property for such amounts, and further decree that such lien shall be foreclosed to enforce the payment of such amounts, unless the same be paid within a reasonable time to be fixed by the court, all of which, however, shall be subject to review by this Court on another appeal, if either party should feel aggrieved because of the decree so made.

It is so ordered.

Reversed and remanded.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

## ON REHEARING.

BUFORD, J.—This case is before us after rehearing granted pursuant to opinion filed herein on October 3, 1935.

It is contended that the opinion and judgment in this case is at variance with the opinions and judgments in the cases of A. C. L. Ry. Co. v. Amos, 94 Fla. 588, 115 Sou. 315; and Ellis v. A. C. L. Ry. Co., 68 Fla. 160, 66 Sou. 1005, and that the opinion does violence to Section 46 of Chapter 5596, Acts of 1907, and amendments thereto now appearing as Section 960 C. G. L., 1927.

The pertinent part of that section is quoted in the original opinion and it could serve no useful purpose to again quote it here.

Our construction of the above mentioned section is that it establishes as principles for the taxation of railroad property that there should be *first* ascertained the total length and value of the main track, branch, switch and spur tracks and side tracks owned by a railroad in this State and that there should be ascertained the value of lots, or parts of lots, not leased or rented and that there should be ascertained the value of the terminal facilities in the State. And, *second,* that there should then be ascertained the length of track mileage and the value thereof in each county, such

value to be determined by ascertaining what proportion the track mileage in the county bears to the total track mileage in the State and taking a like proportion of the total track valuation for the track valuation in the county; that then there should be ascertained the value of lots, or parts of lots, not leased or rented, and the value of terminal facilities in each county which should be apportioned for the purposes of State and county taxation to the track mileage in the county and the total tax assessed on a mileage basis, that is, the valuation of the lots, or parts of lots, owned and not leased or rented, and the value of terminal facilities, should be added to the value of the track mileage in the county to constitute the county assessment. Now by applying the provisions of Sections 1 and 5 of Article IX of the Constitution, the municipalities in taxing railroad property should follow these principles established by law for State taxation.

In arriving at the value of track mileage, the taxing authorities may not determine the value merely of railroad tracks, but the valuation of track mileage should cover the right-of-way, roadbed and tracks for main lines and the right-of-way, roadbed and tracks for side track, spurs, etc.

For railroad purposes the law contemplates that each track mile is dependent for its value on all other track miles within the unit and for track mile assessment purposes the total miles in the State is the unit.

There is nothing in the original opinion in this case which precludes the municipality from making its own assessment, just as was held to be its right to do in the Ellis case and in the case of A. C. L. Ry. Co. v. Amos, *supra*. Of course, in determining the values to be placed on lots, parts of lots and terminal facilities, the limited use of the property, together with its earning value, as well as its cost less

depreciation, are elements that should be taken into consideration. See City of Tampa v. Colgan, opinion filed on October 15, 1935.

The principles herein outlined were not followed by the municipality in making the assessment complained of. The judgment entered herein on October 3, 1935, reversing and remanding the cause is now adhered to, as qualified and explained in the opinion on rehearing.

WHITFIELD, C. J., and ELLIS and DAVIS, J. J., concur.

TERRELL and BROWN, J. J., agree to the conclusion.

## ON SECOND PETITION FOR REHEARING.

PER CURIAM.—This second petition for rehearing shows that appellee has misapprehended the meaning of the opinion rendered by this Court on rehearing and filed January 13, 1936. Our opinion does not hold that the municipality must place the same valuation upon the side tracks that it places upon the main track. Our opinion on rehearing must be considered in connection with our original opinion, which discloses that the Comptroller's return to the City Clerk of Bradenton for the years 1925 to 1929, inclusive, shows that the State Railway Assessment Board had itself placed a different valuation on the side tracks located in Bradenton from that placed upon the main track. This practice was not criticized in the opinion, nor is it violative of the principles established for the taxation of railway real property as prescribed by Section 960, Comp. Gen. Laws; and, as we have already plainly stated in our former opinions, while the municipality is not precluded from making its own assessment, in doing so it must, in obedience to the constitutional command, follow the principles established for State taxation of railway real property, which principles are laid down in Section 960, Comp. Gen. Laws of 1927.

Petition for further rehearing denied.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.