A. J. VANCE, *Appellant*, v. M. M. ROBERTS, DONELLA ROBERTS, His Wife, and E. K. WALKER, *Appellees.*

Opinion filed August 1, 1928.

*Leitner & Leitner,* for Appellant;

*W. W. Whitehurst,* for Appellees.

GIBLIN, Circuit Judge:

It appears from the bill of complaint filed by the appellant in the lower court against the appellees that on March 7, 1925, the appellees, M. M. Roberts (who was the owner in fee of the lands involved in the suit), and Donella Roberts, his wife, entered into a written agreement wherein they agreed that, if the appellant should first make the

payments and perform the covenants mentioned in the agrement to be performed by him, they would convey and assure such lands to the appellant, his heirs, executors, administrators or assigns, in fee simple, clear of all incumbrances whatever, by "a good and sufficient deed, with abstract."

The appellant, as shown by the agreement, a copy of which is attached to and forms a part of the bill, agreed to pay to the vendor, as the purchase price of the lands, the sum of $10,815, of which the sum of $500 was paid upon the execution of the agreement. The agreement prescribes the payment of the sum of $2,204 "on delivery of warranty deed and clear title." The balance of the purchase price was agreed to be paid in three subsequent installments of $2,704 each, the first payable "one year from date of deed," the second "two years from date of deed," and the third "three years from date of deed."

The agreement contains the provision that "in case of failure of the said party of the second part (appellant) to make either of the payments or any part thereof, or to perform any of the covenants on his part hereby made and entered into, for the space of thirty days, this contract shall be forfeited and terminated, and the party of the second part shall forfeit all payments made by him on this contract; and such payments shall be retained by the said parties of the first part (the appellees, M. M. Roberts and Donella Roberts, his wife) in full satisfaction and liquidation of all damages by them sustained, and said parties of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action whatever."

The appellant alleges in his bill that subsequent to the execution of the agreement he procured an abstract of title to the involved lands, from which it appeared that the title to the lands was incumbered by a mortgage lien se-

curing an indebtedness of less than $2,000 and that there were "some irregularities in some of the conveyances." He further avers that from time to time he communicated to the appellee, M. M. Roberts, the desire of the appellant to purchase the lands; and that on each of such occasions the appellee, Roberts, advised the appellant that the title to the lands would be perfected, that the mortgage indebtedness would be discharged and that a warranty deed, conveying the title to the lands, would be executed and delivered by the appellee-owner and his wife to the appellant; but that on June 12, 1925, the appellant received from the appellee-owner, through the mails, a check in the sum of $500, together with a communication from him in which he stated that "he did not care to live up to" the agreement. The appellant thereupon, as he avers in his bill, went to the appellee-owner and tendered to him the sum of $2,204 and demanded the execution and delivery of the deed provided for in the agreement.

It is further averred in the bill that the appellant stands ready to comply strictly with the agreement and that he has, at all times since the execution of the agreement, been ready, able and willing to comply strictly therewith; but that the appellees, M. M. Roberts and Donella Roberts, his wife, have, without reason or excuse, refused to convey the involved lands to the appellant.

It appears from the bill that the agreement was properly executed and acknowledged by the appellee-owner and his wife, that it was signed by the appellant and that it was duly recorded in the public records of the county wherein the involved lands are located on April 4, 1925. It is alleged that subsequent to such recordation the appellees, M. M. Roberts and Donella Roberts, his wife, entered into an agreement with the appellee, E. K. Walker, wherein they agreed to convey to him the lands in controversy.

The bill contains appropriate prayer for the specific enforcement of the agreement in question.

The appellees filed their general demurrer to the bill, assigning as grounds thereof (1) that there is no equity in the bill; (2) that there is no total lack of mutuality in the contract sought to be enforced; (3) that the bill and the contract attached to and made a part thereof show on their face that the complainant and the defendants are not mutually bound by the covenants and conditions of the contract; and (4) that the bill shows that the liability of the complainant is fixed by the contract at less than full performance thereof and the defendants are not bound to perform.

The third and fourth grounds of the demurrer are but re-statements of the second ground—that there is a lack of mutuality in the contract sought to be enforced. And a discussion of the second ground will involve a discussion of the general first ground—lack of equity in the bill.

The argument of counsel for the appellees proceeds upon the theory that under the terms of the agreement the purchaser cannot be compelled to specifically perform (that is, that he cannot be compelled to take the lands and pay the balance of the purchase price, even though the title is satisfactory); that the only remedy available to the vendor is that he may retain the $500 paid upon the purchase price as liquidated damages resulting from the purchaser's failure to perform; and that therefore the contract is, in substance, a mere option.

We will assume, but without so deciding, that counsel for the appellees is correct in his contention that the terms of the agreement limit and restrict the right and remedy of the vendor, in the event of default by the purchaser, in so far as pecuniary relief is concerned, to a retention of the payment made by the purchaser.

The argument advanced by counsel for the appellees is plausible, but he loses sight of the substance of the contract and rests solely upon the provisions thereof relating to the remedy available to the vendor in the event the purchaser fails to perform. The fact remains, however, that the contract constitutes an agreement on the part of the owner and his wife to convey, and on the part of the purchaser to pay for, the lands involved. This, we think, distinguishes it from a mere option contract, although we are not prepared to say that the conclusion we have reached would have been different should we have construed the agreement in question as an option contract.

In Warevelle on Vendors (2nd ed.), Sec. 125, the distinction between an option and a contract for sale is commented upon as follows: ''There is a marked distinction between an option of sale and a contract for sale, although such distinction is frequently overlooked. If, without consideration, an option is a mere proposal which may be retracted at any moment, if given for a consideration, it amounts to nothing more than a privilege to purchase at a certain price or within a certain time. It is not a sale; it is not even an agreement for a sale; at best it is but a right of election in the party receiving same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell. If based upon a consideration, it cannot be extended beyond the time limited without a new consideration, and even though this is attempted and such extension is evidenced by a writing, it is still *nudum pactum* and void.''

The fact that the agreement in question confines the vendor's remedy (if counsel for the appellees is correct and it does so) against the purchaser to the recovery of liquidated damages (and that is what the right to retain the $500 paid upon the purchase price amounts to) does

not alter the fact that the contract is, on the owner's part, a promise to sell, and, on the purchaser's part, a promise to purchase. An agreement in a contract, specifying and limiting the particular remedy available to a party to the contract upon the breach thereof by the other, does not change the respective mutual promises which constitute the substances of the contract. The complainant in the case at bar did not contract and pay for a mere privilege to purchase lands at a future time, but he agreed to purchase the lands and paid part of the purchase price. We are of the opinion that the contract is one for the sale of the lands, the parties being bound thereby as seller and purchaser respectively, even though (as counsel for the appellees contends) the remedy of the seller, upon breach by the purchaser, may be confined to liquidated damages.

Viewed as a contract for the sale of the lands involved, do its terms disclose (1) such want of mutuality of obligation that equity will decline to recognize and enforce it as a binding contract; or (2) such want of mutuality of remedy, available to each of the respective parties upon a breach by the other, that equity will not enforce specific performance against the vendor because such remedy would not be available to the vendor upon a breach by the purchaser?

We do not think that there is any lack of mutuality of obligation, even if the legal effect of the terms of the agreement is as counsel for the appellees argues that it is, merely because of the fact that the purchaser may have satisfied all obligations of the contract upon his part by forfeiture of the amount paid upon the purchase price. His very obligation to forfeit this sum is a sufficient consideration to support the promise made by the appellee-owner and his wife to convey. Clearly this is sufficient mutuality of obligation.

The question of want of mutuality of remedies, as affecting appellant's right to enforce specific performance of the contract, is one, at first thought, of seeming difficulty, in view of the fact, if the construction placed upon the terms of the contract by counsel for the appellees is correct, that the owner's remedy for a breach on the part of the purchaser is limited to liquidated damages, measured by the amount paid upon the purchase price. Counsel for the appellees invokes the general rule that there must be mutuality of remedy as well as of obligation in order to enable either party to invoke the remedy of specific performance.

In 2 Pomeroy's Equitable Remedies, Sec. 769 (supplementary to Pomeroy's Equity Jurisprudence), the learned author states the rule, which seems to be subject to many exceptions, as follows: "The frequent statement of the rule of mutuality, 'that the contract, to be specifically enforced, must as a general rule be mutual (that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other),' is open to so many exceptions that it is of little value as a rule. But, in view of the firm place that the doctrine of mutuality has obtained in the courts of equity, it seems well to attempt a restatement that shall be more free from exceptions. The following form seems to meet the cases generally. If, at the time of the filing of the bill in equity, the contract being yet executory on both sides, the defendant, himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so lacking in mutuality that equity will not compel the defendant to perform, but will leave the plaintiff to his remedy at law. This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its

aid for lack of mutuality. So far as there is a principle of mutuality, it is a mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made. Equity is entirely willing to grant plaintiff the performance he applies for, but, if it finds that in doing so the defendant, without fault, is left in turn to a remedy at law only, it refuses to lend its aid to such an unequal result. Therefore any original lack of mutuality in the terms of the contract will have no influence if the court finds that giving the plaintiff his relief will no longer leave the defendant to the law for relief.''

It is readily apparent that the appellee-owner in this controversy will not be left, if specific performance is decreed, to seek any remedy in any form other than the court of equity in which this suit was instituted. Indeed, in view of the appellant's tender, which has at all times been kept good, so it is alleged in the appellant's bill, the appellee-owner will not require any remedy at law or in equity to enforce his rights.

We are of the opinion that, at the time of the commencement of this suit and since then, by reason of the appellant's tender, the defense of want of mutuality of remedies is not available to the appellees. The appellees are in such a situation that they need no remedy, except that the appellant's tender be kept good and that he be required to pay the required portion of the purchase price of the involved lands at the time of the conveyance of the lands to him, which can, of course, be provided for in the decree of the court. Black v. Maddox (Ga.), 30 So. E. R. 723; Wright v. Suydam, 72 Wash. 587, 131, Pac. 239; LeNoir v. McDaniell, 80 Fla. 500, 86 So. R. 435; Pomeroy's Specific Performance of Contracts (3d Ed.) Sec. 162 et seq.

Counsel for the appellees argues in his brief, although

no specific ground of demurrer presented the contention, that the appellant's bill of complaint shows that the appellant is in default under the terms of the agreement sought to be enforced.

We have seen that the appellant is required by the agreement to pay the sum of $2,204 "on delivery of warranty deed and clear title." It is alleged in the bill that the appellant tenderd this amount to the appellee-owner and demanded the execution and delivery of the deed; and that the appellant is ready, able and willing to comply with the agreement on his part. At the time the appellant tendered the sum mentioned, at the same time demanding a deed in pursuance of the contract, the appellee-owner had not offered to perform the agreement on his part or made any demand upon the appellant to perform the contract; and the appellant had not theretofore sought to rescind on account of defective title. It is plain, from the terms of the agreement, that the payment of the sum of $2,204 and the conveyance of the lands are mutual, concurrent and dependant acts, to be performed by the respective parties at the same time. It is clear, therefore, that, in so far as the allegations of the bill disclose, the appellant was not in default under the terms of the agreement at the time of the alleged tender or at the time of the institution of the suit.

If specific performance is to be decreed and effected, it may be taken as a matter of course that the agreement entered into by the appellees M. M. Roberts and Donella Roberts, his wife, with the Appellee Walker, wherein they agreed to convey to him the lands in controversy, will be cancelled inasmuch as the appellant's bill shows that the Appellee Walker purchased with constructive notice of the rights and equities of the appellant affored by the recordation of the agreement under which the appellant seeks relief.

We think the chancellor below erred in sustaining the demurrer of the appellees to the appellant's bill of complaint. The order appealed from will therefore be reversed.

And it is so ordered.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chap. 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the order of the Court below should be, and the same is hereby, reversed.

ELLIS, C. J., AND WHITFIELD, STRUM, BROWN, AND BUFORD, J. J., concur.