## ROBERT NELSON v. W. A. WATSON.

155 So. 101.

Opinion Filed November 28, 1933.

*B. K. Roberts,* for Petitioner;

*Cary D. Landis,* Attorney General, *H. E. Carter* and *Robert J. Pleus, Assistants,* for Respondent.

BUFORD, J.—This is an original proceeding in habeas corpus.

The petitioner was arrested charged with the offense of having failed to place a documentary stamp upon a written instrument on which it was required under the provisions of Chapter 15787, Acts of the Legislature of 1931. The written instrument on which it was alleged the petitioner failed to place the required revenue stamp was set out in the affidavit as follows:

"HERNDON'S INC.

"Tallahassee, Florida, August 30, 1933.

"Delivered to ........................Robert Nelson
"Address ................................
"Post Office ...........................Tallahassee, Florida.
"Employer ...........................

*"Pcs. No. Finish Size Factory Statement of Received*
*value*

"one      oak    std.      Rocking chair $2.50    .50

"Paid No Dollars .50 Cents Cash and which is to be applied together with all goods in exchange as rent for the first month only, and I further agree at the end of said month to surrender and deliver all of the above described property to HERNDON'S INCORPORATED, unless I exercise my

option and continue to rent the same, when I will pay the sum of No Dollars Fifty cents on the 30th day of each month hereafter in advance for the monthly rental of said goods.

"I further agree to hold goods as the property of Herndon's Inc., at the address given above and not to allow same to be moved without its written consent, to keep same in good condition and allow its representatives to enter and inspect goods at all times and at the termination of this lease to return all goods received in good order, usual wear excepted.

"Should I fail to comply with any of the above conditions I hereby authorize said Company or its agents to terminate this lease without notice and leave and license is hereby given said company or its agents to enter without notice any premises which I occupy to search for and retake possession of all their goods received and without being liable for any suit, action or damage for so doing either from myself or anyone claiming under or through me, and further, I will not be entitled to any credit allowance or refund for payments previously made.

"The said Company grants me the privilege to purchase all goods hereby received, before the termination of this lease, by paying in cash the full valuation of same, in which case credit will be allowed for all payments previously made on this lease.

"I hereby acknowledge the receipt of a copy of this lease and that statement of goods is correct. It is understood and agreed that this contract contains no obligation to pay money either for the price or rental of said goods, and that any default in or failure to pay said rent shall only entitle the lessor under this contract to retake said property.

"Herndon's Inc

"By Agent G. C. Herndon (G. C. Herndon) (Lessee's Signature) Robert Nelson (Robert Nelson)."

The return admits the allegations of the petition.

The case is submitted on the petition, the return and a stipulation of facts. The stipulation is as follows:

"That Herndon's Inc., is a licensed retail furniture store and pursues the occupation of selling and delivering retail furniture; that on the 30th day of August, A. D. 1933, Herndon's Inc., contracted with Robert Nelson to sell him a rocking chair for the price of Three Dollars and Fifty Cents ($3.50); that the said Robert Nelson was to pay as the initial payment on said chair the sum of fifty cents and was to pay the sum of fifty cents on the first day of each month thereafter; that when the sum of Three Dollars and Fifty Cents ($3.50) had been paid the said Robert Nelson would become the unconditional owner of said property; but until the purchase price had been paid in full the said Herndon's Inc., would be the owner of the title to said property; that for the purpose of protecting the credit extended, the said Herndon's, Inc., procured the said Robt. Nelson to execute the lease contract which is made a part of this controversy; that no documentary stamp was affixed to said contract by the said Robert Nelson, nor was it affixed by any other person, and that the said Robert Nelson wilfully issued the said lease contract to the said Herndon's Inc., and that by virtue of the premises aforesaid no documentary stamp tax has been paid to the State of Florida on said lease contract;

"That said transaction occurred in Leon County, Florida, and that by virtue of this transaction the said Herndon's Inc., and the said Robert Nelson evaded the payment of a documentary tax which they would have been required to

pay if the standard form of retain title contract generally in use had been utilized by these parties."

Under the statute the stamps are required "On promissory notes, non-negotiable notes, written obligations to pay money, assignment of salaries, wages or other compensation, made, executed, delivered, sold, transferred or assigned in the State of Florida and for each renewal of the same on each $100.00 of the indebtedness or obligation evidenced thereby, 10c. Mortgages which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate."

Section 3836, R. G. S., 5724, C. G. L., provides as follows:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

In Hull, et al., v. Burr, 58 Fla. 432, 50 Sou. 754, this Court said:

"Section 2494 of the General Statutes of 1906, providing that 'all deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instruments be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and

shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages,' is quite comprehensive in its scope, and should be liberally construed in order to carry out the legislative intent.

"An instrument must be deemed and held a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money; and the mere absense of terms of defeasance cannot determine whether it is a mortgage or not."

In Connor, *et al.*, v. Connor, *et al.*, 59 Fla. 467, 52 Sou. 727, this Court repeated the above statement and said further:

"Under the statutes of this State a mortgage acquires only a specific lien on the property of another described in the mortgage, and an 'instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money,' may upon its face convey title to property, subject to the provisions of the statute that it 'shall be deemed and held a mortgage,' if by extrinsic facts the statute is shown to apply."

In Pittman v. Milton, 69 Fla. 304, 68 Sou. 658, this Court held:

"Under the statutes of this State a mortgage acquires only a specific lien on the property of another described in the mortgage, and an 'instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money,' may upon its face convey title to property, subject to the pro-

visions of the statute that it 'shall be deemed and held a mortgage' if by extrinsic facts the statute is shown to apply.

"If an instrument is a mortgage when executed, its character does not afterwards change, for 'once a mortgage always a mortgage' is a maxim of the law.

"Where an agreement that a conveyance is not a mortgage, but an absolute conveyance, is wholly inconsistent with the facts of the case, such agreement does not make absolute a conveyance that under the statute may be shown to have been executed 'for the purpose and with the intention of securing the payment of money.'"

Now, the instrument set out in the affidavit, taken in connection with the stipulation of facts, shows conclusively that there was a conditional sale and purchase of the rocking chair described in the written instrument and that the instrument, while purporting to be a lease, was in fact a paper writing taken to secure deferred payments incident to the purchase of the chair. The chair and its value are named in the instrument. The chair is to remain the property of the vendor until the amounts agreed to be paid as rentals equals the amount of the value stated. The rentals or instalments are to be paid on the 30th day of each month after date of the instrument. There is no term or lease mentioned, but it is provided that the chair may be purchased by the payment of the rentals in the aggregate amount equal to the value named. Until the rentals paid equal the value fixed, the title to the property remains in the vendor and so remains to secure the payment of the rentals which in time will equal and constitute the purchase price of the property.

It appears to us that by the terms of this written instrument the amount of the indebtedness which must be paid before the property becomes vested in the vendee is in-

corporated in the instrument and is not otherwise shown in a separate instrument. Therefore, we hold it to be a mortgage which incorporates the certificate of indebtedness not otherwise shown in a separate instrument and it is subject to the provisions of Chapter 15787, Acts of 1931, in requiring the placing of documentary stamps evidencing the payment of a documentary tax thereon.

This concludes the sole question presented in the case and, therefore, the petitioner should be remanded to the custody of the respondent to be dealt with according to law. It is so ordered.

Petitioner remanded.

WHITFIELD, ELLIS and TERRELL, J. J., concur.

DAVIS, C. J., dissents in part and concurs in part.

BROWN, J., dissents.

DAVIS, C. J. (dissenting in part).—In this case the right to pursue a criminal prosecution is about to be sustained against petitioner for the doing of an act which was done in reliance upon the Attorney General's opinion to the effect that the provisions of Chapter 15787, Acts of 1931, did not require documentary stamps to be placed on the instrument which the criminal process alleges was not stamped in accordance with Chapter 15787, Acts of 1931.

I think that in a case like this the departmental construction against the government placed upon an ambiguous revenue statute by the Attorney General of this State, should be recognized and upheld by the courts, so long as it remains unreversed by judicial decision, and that acts done by citizens and business men in reliance upon the Attorney General's ruling must be regarded as lawful when the statute is a revenue act and, therefore, one properly within the demain of the jurisdiction of the State's chief law officer to construe, which construction when made, should be followed by the

courts unless clearly wrong. State, *ex rel.* Comfort v. Leatherman, 99 Fla. 899, 128 Sou. Rep. 21.

At the same time I think that for future application the statute as framed, is reasonably susceptible to the construction that its specific requirement that a documentary stamp tax be paid on "mortgages which incorporate the certificate of indebtedness, not otherwise shown in separate instruments" refers to mortgages which are mortgages *de facto* under our statute law, whether framed in the usual form of mortgages or not.

The language of the statute (par. 4, Section 1, Chapter 15787) that, "Mortgages which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate." This means that mortgages *de facto* are taxable at the same rate as written obligations for the payment of money *eo nomine,* the intention of the statute being to tax primarily the note, bond, or other written evidence of debt secured by the mortgage where *both* exist, but not to exempt the mortgage debt from tax merely because the mortgage debt is represented by a certificate or recital in the mortgage, instead of being in the form of a separate note, bond or other written evidence of the debt.

BROWN, J. (dissenting).—It is clear that the statute in question places no tax on oral contracts. The pertinent portion of the statute, as applying to this case, is quoted in the majority opinion. It shows that the Legislature has provided that a ten-cent stamp shall be affixed to all written obligations to pay money on each $100.00 of the indebtedness or obligation evidenced thereby. Under this portion of the statute, no stamps need be affixed to the instrument here in question unless it is either a written obligation to pay money,

or a mortgage which incorporates the certificate of indebtedness not otherwise shown in a separate instrument.

The contract involved in this case is a lease of personal property. It provides that the lessee has paid a certain fixed sum as the initial rental of the article in question for the first month of the lease, and that thereafter, in the event the lessee desires to continue in possession of the chattel, he shall pay a certain fixed sum as rent. He is given the option to either surrender up the property at the end of the first month or to rent the same at a certain fixed sum payable monthly in advance. The liability to pay the rent thus depends upon the option or election of the lessee. If he desires to surrender possession of the chattel, there is no obligation on his part to pay the lessor anything. The contract specifically provides that it contains "no obligation to pay money either for the price or rental of said goods, and any default in or failure to pay said rent shall only entitle the lessor under this contract to retake said property." This lease agreement is not a conditional sales contract; neither is it a mortgage. There is of course, a vital distinction between the two. The title to the property not having passed to the lessee, he has nothing to mortgage.

Under the holdings of this Court, the vendor under a conditional sales contract has three remedies against the conditional vendee. He may bring an action to recover the purchase price, in which case he loses his right to pursue the property. Or he may bring an action of replevin to recover possession of the personal property thus conditionally sold, but the title to which he retains until the purchase price is paid. Or he may go into a court of equity to establish a lien on the property for the amount of the unpaid purchase price. See Voges v. Ward, 123 So. 785, 98 Fla. 304; Malone v. Meres, 91 Fla. 709, 109 So. 677; Hilton v.

Sinclair, 93 Fla. 1121, 113 So. 568; American Process Co. v. Fla. Brick Co., 56 Fla. 116, 47 So. 942, 16 Ann. Cases 1054; Holmberg v. Hardee, 108 So. 211, 90 Fla. 787; Nelson v. Stockton Mfg. Co., 130 So. 764, 100 Fla. 791.

Under the contract involved in this case the lessor has only one remedy; that is, the right to retake the property. The contract provides that he has no right of action against the lessee for damages, and his sole remedy under this contract is that of replevin. So this is not a conditional sales contract.

Nowhere in the contract is the lessee required to pay any sum of money. He is given the option to purchase the chattel described in the contract by paying the stated value set forth therein. However, the exercise of this option is left solely to the discretion of the lessee. The rent for the first month of the lease is paid in advance. The payment is made at the time the contract is entered into and no obligation is created on the part of the lessee to make any further payment. The rent for the second month does not constitute a debt as no obligation of any kind can arise until after the lessee has elected to retain possession and rent the property for the second month. The contract does not state that the lessee must pay any sum as rent, but merely fixes the rate of the monthly rental in the event the lessee later exercises an option to continue to rent the chattel. If he elects to surrender the chattel at the end of the first month, he is under no obligation, either legally or morally, to pay the lessor anything.

Under the statute, the stamp should be affixed if the document is of such a nature as to require a stamp at the time of its execution. But at the time of the execution of this lease agreement, there was no obligation on the part of the lessee, created by the written contract, to pay any

money to the lessor. Stamp taxes such as these, where they are applicable, accrue and become due when the instrument is executed. As the contract here in question, as drawn and executed, does not come within the purview of the statute, no stamps were due the State at the time of its execution. This Court has often held that statutes conferring authority to impose taxes must be construed strictly in favor of the tax payer and against the grantee of the power. Atlantic Coast Line Railway Co. v. Amos, 94 Fla. 588, 115 So. 315, and cases cited. The tax imposed under this statute, is not a tax on property but is an excise tax, a tax imposed upon certain kinds of documents or instruments in writing. The right to acquire and possess property cannot alone be made the object of an excise tax, nor can such a tax be laid upon the mere right to possess the fruits thereof. Jerome H. Sheip Co. v. Amos, 130 So. 699, 705; 26 R. C. L. 236. On the other hand, the use of property may be the object of an excise tax, and that such excise tax may take the form of a stamp tax on documents of certain classes is well settled. Thus, the excise tax provided by this statute must be construed as a tax imposed upon the document itself. Therefore the sole question before us is whether or not the written document involved in this case is a written obligation to pay money, or a mortgage which incorporates the indebtedness not shown in a separate instrument; for it could not possibly fall within any of the other classes of instruments described in the statute. Chapter 15787.

In determining this question, the Court cannot look beyond the document itself to determine its character. Thus the stipulation entered in this case and set out in the majority opinion, is of no service. We cannot look to parole evidence to determine what the intention of the parties was in executing this document. To hold otherwise would lead

to uncertain consequences in the administration of the statute. The stipulation as to the facts, filed in this case, indicates that the real contract between the parties, orally entered into, was in the nature of conditional sales contract, and was quite different from the contract actually reduced into writing and executed; and that the probabilities are that the form of written contract which was actually executed was adopted in order to evade the payment of a stamp tax. But this does not change the principle above alluded to.

"Whatever an instrument purports on its face to be determines whether or not it must be stamped. As against the objection that the adoption of a certain form of instrument might constitute a device to defraud the revenue, it has been declared that the adoption of a rule that the form of the instrument can be disregarded, and its real character be investigated for the purpose of determining the stamp duty would produce difficulties and inconveniences vastly more injurious than any fraud that might be perpetrated. So, if the device is carried out by the means of legal forms, it is subject to no legal censure. To illustrate: The Stamp Act of 1862 imposed a duty of two cents upon a bank check, when drawn for an amount not less than $20.00. A careful individual, having the amount of $20.00 to pay, pays the same by handing to his creditor two checks of $10.00 each. He thus draws checks in payment of his debt to the amount of $20.00, and yet pays no stamp duty. This practice and this system he pursues habitually and persistently. While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of

payment and thus avoid the tax." 23 R. C. L. 994; citing U. S. v. Isham, 17 Wall. 492; 21 Law Ed. 728.

In the above cited case of U. S. v. Isham, the Supreme Court of the United States discussed this question thoroughly, and among other things said:

"The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself." * * *

"It is said that the transaction proved upon the trial in this case, is a device to avoid the payment of a stamp duty, and that its operation is that of a fraud upon the revenue. This may be true, and if not true in fact in this case, it may well be true in other instances. To this objection there are two answers:

"1. That if the device is carried out by the means of legal forms, it is subject to no legal censure." * * *

"Another answer may be given to the objection more comprehensive in its character. It is this: that the adoption of a rule that the form of the instrument can be disregarded, and its real character be investigated for the purpose of determining the stamp duty, would produce difficulties and inconveniences vastly more injurious than that complained of."

"Since stamps are imposed, not on transactions but on documents, liability of an instrument to stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself." See 33 C. J. 316 and 317 and cases cited.

In Haverty Furniture Co. v. U. S., 286 Fed. 985, it was said:

"The suggestion that the form of contract, with the alteration of it, is an effort to evade the tax, may be laid aside. Where one form of instrument is taxed, and another is not, one may, if he can so satisfactorily transact his affairs, avoid the form that is taxed, and use that which is not. This was held in United States v. Isham, 17 Wall. 496, 21 L. Ed. 728. Under the Revenue Act of 1898 (30 Stat. 448), which laid a tax upon bank checks, a practice was indulged without censure by which, in lieu of a check, an untaxed receipt to the bank for so much money as paid to a named person was issued, and taken up by the bank on presentation. If the instruments here are promissory notes, they are taxable; otherwise, not. As again ruled in Isham's case, the taxability of such an instrument is to be determined by its face alone. Outside facts are of no importance."

So this Court would not be authorized to consider outside facts as to the intention of the parties, but will look at the instrument itself, and since the face of the instrument shows the transaction to be a lease agreement, containing no written obligation to pay money, we cannot hold that it was subject to the tax because the parties intended it to be either a mortgage or a conditional sales contract. It certainly is not on its face either a mortgage or a written obligation to pay money.

I am therefore of the opinion that the petitioner should be discharged from custody.