322 So.2d 525 (1975)
STATE of Florida ex rel. FOUR-FIFTY TWO-THIRTY CORP., a Florida Corporation, Relator,
v.
Fred O. DICKINSON, Jr., As Comptroller of the State of Florida, et al., Respondents.
No. 46200.
Supreme Court of Florida.
July 9, 1975.
Rehearing Denied December 16, 1975.
Edward S. Jaffry, Tallahassee, for relator.
Robert L. Shevin, Atty. Gen., and Harold F.X. Purnell, Asst. Atty. Gen., and Larry Levy, Gen. Counsel, and William B. Corbett, Jr., Asst. Gen. Counsel, Tallahassee, for respondents.
ROBERTS, Justice.
This cause is before us on petition for writ of mandamus by Relator, Four-Fifty Two-Thirty Corporation, seeking to compel Respondents, Comptroller and the Department of Revenue, to refund to it the sum of $73.63 with interest which Relator claims is due and owing him as intangible personal property taxes paid in error. The alternative writ was issued and return was filed by Respondents.
*526 By this petition, Relator, a Florida corporation engaged in the business of selling real property by way of Agreements for Deed, seeks a ruling from this Court that the subject Agreements for Deed, which are taxable as intangible property under Chapter 199, Florida Statutes, be classified and taxed under the provisions of Section 199.032(2).
Pursuant to Chapter 199, Florida Statutes, the Department of Revenue required Relator to return for intangible taxation its Agreements for Deed at the annual rate of one mill under the provisions of Section 199.032(1), which provides:
"(1) An annual tax of one mill on the dollar of the just valuation of all intangible personal property except money as defined in § 199.023(1)(a), and except notes, bonds, and other obligations for payment of money which are secured by mortgage, deed of trust, or other lien upon real property situated in the state;".
Relator in August, 1973, filed its amended Florida Intangible Personal Property Tax returns for 1972 and 1973 and paid a total of $73.63 on such Agreements for Deed pursuant to the requirements of Section 199.032(1). [1972  $43,043, 1973  $30,590, Total Amount  $73,633] Thereafter Relator filed its application for refund pursuant to Sections 199.252 and 215.26, Florida Statutes, and advised the Department of Revenue that the $73,633.00 of intangible personal property assessment was predicated on the Agreements for Deed and that, therefore, no tax was due and owing inasmuch as the same constituted intangible personal property pursuant to Section 199.032(2), Florida Statutes, which provides:
"(2) A nonrecurring tax of two mills on the dollar of the just valuation of all notes, bonds, and other obligations for payment of money, which are secured by mortgage, deed of trust, or other lien upon real property situated in the state."
and that no tax was due until said Agreements for Deed were recorded or sought to be enforced. See Section 199.042(2), Florida Statutes, providing:
"(2) All intangible taxes on notes, bonds and other obligations for payment of money which are secured by mortgage, deed of trust, or other lien upon real property situated in the state shall be due and payable when the instrument is recorded or sought to be enforced."
Relator's refund application was denied by the Department of Revenue on March 20, 1974, and by the Comptroller on April 22, 1974. The Department of Revenue advised Relator that said Agreements for Deed did constitute personal property subject to an annual tax of one mill pursuant to Section 199.032(1), Florida Statutes, rather than intangible personal property subject to nonrecurring tax of two mills pursuant to Section 199.032(2), Florida Statutes, payable pursuant to Section 199.042(2), Florida Statutes.
Thereafter, Relator filed the present petition for writ of mandamus wherein he argues that the Agreements for Deed fall within the provisions of Sections 199.032(2) and 199.042(2), Florida Statutes, and requests that this Court require the Comptroller and Department of Revenue to refund the $73.63 and interest thereon. In opposition, the Department of Revenue and the Comptroller, urge that the Agreements for Deed at issue, sub judice, which provide that the buyers shall have no personal liability thereunder cannot constitute an obligation for the payment of money secured by a lien on Florida realty so as to fall within the taxing purview of Section 199.032(2) rather than Section 199.032(1), Florida Statutes.
Initially, we remark that Mandamus is an appropriate remedy sub judice to seek a refund of the intangible taxes alleged by Relator to have been erroneously paid. In State ex rel. Seaboard Airline R. *527 Co. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948), this Court held that Mandamus was the appropriate remedy under the facts of that case to seek a refund for certain intangible taxes paid. Therein, this Court explicitly stated:
"The language of the statute is mandatory in its nature, particularly as regards the duty of the Comptroller to make tax refunds in cases involving bona fide controversies in which courts of competent jurisdiction have directed that tax refunds be made. Certainly, the present dispute between the parties has been bona fide since its inception. The taxes were paid by the relator under protest and with the avowed intention of seeking a refund. Before proceedings were instituted, demand was made on the Comptroller for the return of the money paid, on grounds going to the constitutional and statutory right of the Comptroller to exact the tax payments. The claim for refund was denied by the Comptroller on the ground that under the statutes relied on by relator, the taxes, as a matter of law, became due and payable as a condition precedent to the recordation of the mortgages. No questions of fact but only questions of law were, or are, involved in the ultimate determination of the controversy. Under the law as applied to the admitted facts of the case, the Class C intangible property tax is either payable in its entirety, is payable only as to bonds issuable to Florida residents, or is not payable at all; the liability or non-liability of the relator for the payment of the tax being entirely dependent upon the ultimate construction to be given the statutes by a court of competent jurisdiction. If under the statutes no authority exists for the imposition of the Class C intangible property tax, either in whole or in part, under the facts stated in the alternative writ of mandamus and admitted by the motion to quash, then a clear legal duty is imposed upon the Comptroller to `make such refund as the Court may direct,' out of a fund expressly established by the legislature and appropriated for that purpose. In essence, therefore, the accuracy or legality of the disputed claim is fixed by law and not dependent upon facts requiring the exercise of a discretion or determination as to the truth or falsity of the claim asserted.
"Under modern practice the use of the writ of mandamus has been very generally expanded far beyond the ancient limitations of matters formerly thought to be justiciable in mandamus, and the writ has been frequently employed where, as here, the speedy determination of the purely legal questions involved will not only put the dispute between the parties at rest but also will furnish an authoritative guide for the conduct of the Comptroller in respect of like matters in the future. See 34 Am.Jur., Mandamus, Sec. 81, pp. 870, 871; Kittredge v. Boyd, State Treasurer, 136 Kan. 691, 18 P.2d 563, 93 A.L.R. 574. As a matter of fact, the writ has been frequently employed in this jurisdiction for such purpose; although we cannot say that in any of our cited decisions the right to the use of the remedy has been challenged by motion, as is the case in the proceeding at bar. However, be that as it may be, we are of opinion that mandamus is the appropriate remedy to settle the purely legal question existing between the parties, and that the motion to quash the alternative writ on the ground asserted must be denied."
Sub judice, Relator and Respondents agree that the subject Agreements for Deed do constitute intangible personal property within the definition of Section 199.023, Florida Statutes.[1] The primary *528 issue before us is whether the subject Agreements come within the classification of Section 199.032(1) and are, therefore, subject to the recurring annual one mill tax or whether they constitute intangible personal property within Section 199.032(2) and are subject to the nonrecurring two mill tax.
Relator contends that the instruments involved create an obligation secured by a lien regardless of the provision contained therein that the buyer is not personally liable upon default. Relator argues that the provision relative to personal liability does nothing more than express the intent of the parties to the effect that, in event of default by the buyer, the remedies available to seller are limited to recapture of the land and forfeiture of payments made by buyer. Relator asserts that the Agreement for Deed fixes a debt and purchase price of the lot and embodies the buyer's promise to pay the debt and the effect of the agreement is to create a lien on the property to be deeded. We agree with Relator that the subject Agreements do constitute intangible property within the classification of Section 199.032(2). Cf. Nelson v. Watson, 114 Fla. 806, 155 So. 101 (1934); State of Florida ex rel. Collier Land Investment Corp. v. Dickinson, 188 So.2d 781 (Fla. 1966); Gulf American Land Corp. v. Green, 149 So.2d 396 (Fla.App. 1, 1962); Jasper v. Orange Lake Homes, Inc., 151 So.2d 331 (Fla.App. 2, 1963), cert. den., 155 So.2d 694 (Fla. 1963); H & L Land Co. v. Warner, 258 So.2d 293 (Fla.App. 2, 1972). The language of the Agreement for Deed clearly sets out an obligation on the part of the buyer to pay a specified purchase price and an obligation on part of the seller to convey clear legal title to the designated property to the buyer upon completion of the payments. One of the Agreements for Deed involved sub judice,[2] attached to the petition, specifically provides:
"Buyer(s) hereby covenant and agree to pay to the Sellers the sum of $1395.00, with interest at the rate of 6% per annum on the unpaid balance, to be paid as follows: $20.00 cash in hand, the receipt of which is hereby acknowledged, and $20.00 or more per month on or before the 21st day of each and every month, until paid in full beginning February 21, 1969 to be mailed to Seller's agent."
In Vance v. Roberts, 96 Fla. 379, 118 So. 205 (1928), the parties entered into an Agreement for Deed similar to the Agreements for Deed involved sub judice, wherein the sellers agreed that if the buyer should first make the payments and perform the covenants mentioned in the agreement to be performed by him, the sellers would convey such lands to the buyer clear of all incumbrances by good and sufficient deed. The agreement contained the provision that if the buyer failed to make any of the payments or any part thereof within thirty days after due date, the contract would be forfeited and terminated and the buyer would forfeit all payments made which payments would be retained by the sellers in full satisfaction and liquidation of all damages by them sustained. *529 Relative to the obligation of the buyer to pay despite the confinement of the seller's remedy in the agreement to liquidated damages, this Court in Vance, supra, opined:
"The fact that the agreement in question confines the vendor's remedy (if counsel for the appellees is correct and it does so) against the purchaser to the recovery of liquidated damages (and that is what the right to retain the $500 paid upon the purchase price amounts to) does not alter the fact that the contract is, on the owner's part, a promise to sell, and, on the purchaser's part, a promise to purchase. An agreement in a contract, specifying and limiting the particular remedy available to a party to the contract upon the breach thereof by the other; does not change the respective mutual promises which constitute the substance of the contract. The complainant in the case at bar did not contract and pay for a mere privilege to purchase lands at a future time, but he agreed to purchase the lands and paid part of the purchase price. We are of the opinion that the contract is one for the sale of the lands, the parties being bound thereby as seller and purchaser, respectively, even though, as counsel for the appellees contends, the remedy of the seller, upon breach by the purchaser, may be confined to liquidated damages. (italics supplied)
* * * * * *
"We do not think that there is any lack of mutuality of obligation, even if the legal effect of the terms of the agreement is as counsel for the appellees argues that it is, merely because of the fact that the purchaser may have satisfied all obligations of the contract upon his part by forfeiture of the amount paid upon the purchase price. His very obligation to forfeit this sum is a sufficient consideration to support the promise made by the appellee owner and his wife to convey. Clearly this is sufficient mutuality of obligation."
Cf. Carman v. Gunn, 198 So.2d 76, at 81-82 (Fla.App. 1967).
We further find, as Relator contends, that the non-recurring two mill intangible tax on the subject Agreements for Deed is due and payable when the instruments are recorded or sought to be enforced pursuant to Section 199.042(2), Florida Statutes. Cf. State ex rel. Collier Land Investment Corp. v. Dickinson, supra; McKeown v. Collins, 38 Fla. 276, 21 So. 103 (1896); Alabama-Florida Co. v. Mays et al., 111 Fla. 100, 149 So. 61 (Fla. 1933). See also: State ex rel. Rogers et al. v. Sweat, 113 Fla. 797, 152 So. 432 (1934).
Respondents urge that a holding that the tax is due when the instrument is recorded or sought to be enforced may allow Relator to escape the intangible tax completely if, in fact, the instrument is not recorded nor sought to be enforced. However, in State of Florida ex rel. Collier Land Investment Co. v. Dickinson, supra, at 784, a similar position taken by Respondent Comptroller was found to be untenable by this Court.
Relator requests not only a refund of the intangible taxes in the amount of $73.63 since the subject Agreements for Deed have not been recorded nor sought to be enforced, but also interest on this amount. Respondents urge that interest is not due and payable to Relator in the absence of statutory authority permitting the same. Relator has not responded to this point. Relative to the recovery of interest due on a refund of a tax overpayment, this Court in Mailman v. Green, 111 So.2d 267 (Fla. 1959), refused to allow interest and explicitly stated, inter alia:
"It should now be remembered that strictly speaking this was not an action against the state for recovery of money *530 but one against the Comptroller predicated on the assertion that the petitioners had a clear legal right to coerce the performance by him of a duty, namely, the payment to them of the interest described... .
"... Furthermore, we have not found authority in the statutes or decisions for the payment by the Comptroller of interest on the overpayment even had the amount been certain before entry of the judgment of the Federal Tax Court.
"The only section in Chapter 198, supra, that appears pertinent to the present case, Sec. 198.29, provides for refund of overpayment and overpayment of interest `thereon' but it is silent about payment to the taxpayer by the Comptroller of interest on the tax.
"At the suggestion of the petitioners we have examined also Sec. 215.26, Florida Statutes 1943, and F.S.A., a part of the chapter dealing with `Financial Matters, Generally' and here we have found no provision for payment of interest on refunded taxes.
"To repeat, the amount ultimately to be paid was throughout the litigation in doubt. Whether the Comptroller should refund any or all of it could not have been divined by that officer and that being the case, we have found no room for the play of equitable principles relative to unjust enrichment of the state at the expense of its citizens, or failure of the state to deal fairly with them.
"Within what appears on the face of it to have been a reasonable time after the Tax Court fixed the amount, 27 days, the Comptroller paid to petitioners the exact amount to which they were entitled. This, in our opinion, was all he was required to do and he could not have done it earlier. That being our conviction, we cannot accept the argument that the state should be required to pay for interest an amount computed from the day of the original payment.
"The money was not inequitably withheld by the state and used by it to the detriment of petitioners. The matter was simply in suspense, pending settlement by a court of a dispute to which the state was not directly but only vicariously interested."
See also: Hansen v. Port Everglades Steel Corp., 155 So.2d 387 (Fla.App.2, 1963). Neither Section 215.26 nor Section 199.252, Florida Statutes, pursuant to which relator seeks refund, provide for the payment of interest, and we find that Relator is not entitled to interest on the refund sought sub judice.
Accordingly, having determined that the subject Agreements for Deed constitute intangible property within the classification of Section 199.032(2) and is payable pursuant to Section 199.042(2), we grant a peremptory writ directing Respondent to draw his warrant for the return of the intangible tax paid in the amount of $73.63.
It is so ordered.
ADKINS, C.J., BOYD, McCAIN and OVERTON, JJ., and KLEIN, Circuit Judge, concur.
ENGLAND, J., dissents with an opinion.
ENGLAND, Justice (dissenting).
I dissent. As a jurisdictional matter, I do not believe that we should entertain an original mandamus proceeding on this legal issue.[1] The need for a "speedy determination of the purely legal questions"[2] in this case is far overshadowed by the legal significance of our ruling and by the lack of *531 notice to and opportunity to hear from the numerous other Florida land companies with the same legal concern. In a case of substantial statewide concern such as this, I believe we could benefit from a more complete record and from the wisdom of lower courts we judicially know have already ruled on or are now considering the same question.[3]
On the merits of this case, I am not persuaded by the majority's analysis of the legal issues. The practical effect of the Court's decision could be to exempt an entire class of intangible property  agreements for deed  from any imposition of the state's intangible personal property tax.[4] I do not believe that result is justified by the statutes or by the common law of this state. If the burden of this tax falls onerously on an industry which is pervasive in and economically important to Florida, the proper place to adjust that burden is in the legislative branch.[5]
All parties concede that the documents in question ("the agreements") are intangible personal property within the meaning of Section 199.023, Florida Statutes. Since neither party considers these documents to be money, stocks, shares, trust interests, notes or bonds, they are either "obligations for the payment of money" or they are unclassified "intangible personal property."[6] If the latter, they are taxed at an annual one mill rate prescribed by Section 199.032(1), Florida Statutes. If obligations for money, they are taxed by one of two mutually exclusive provisions, depending upon whether they are "secured by... other lien upon real property situated in the state."[7] I believe they are not so secured so that, being unsecured obligations for money, they should be similarly taxed at an annual one mill rate prescribed in Section 199.032(1), Florida Statutes.

Unclassified Intangible Personal Property
In considering whether the agreements are obligations for money, the majority has wholly ignored State ex rel. Weinberg v. *532 Green, 132 So.2d 761 (Fla. 1961). That case required a construction of the phrase "obligation to pay money", virtually the same statutory language we now have under review, for purposes of applying the documentary stamp tax laws to an agreement for deed identical to the one before us. In holding that the tax did not apply the Court there said:
"Under no circumstances could the agreement for deed be construed as an `obligation to pay money', because Section 7 thereof, among other things, provides that it impose no personal liability `as against the buyer or any subsequent purchaser from the buyer, or any beneficiary for whom they may be acting, it being the understanding of the parties that the seller will look only to the land itself for payment of the balance of the purchase price.'"[8]
While I do not agree that the absence of personal liability obviates the creation of a legally enforceable obligation to pay money, the Weinberg case would appear to require the imposition of an annual one mill levy on this unclassified intangible personal property. The only difference I detect between that case and this one is not in the reasoning, since both are tax statutes with identical verbiage applied to documents of identical legal effect, but in the result. In Weinberg the Court's construction of the phrase resulted in an exemption from tax. In this case the same construction would result in imposition of tax. Either Weinberg should be overruled or deemed controlling.[9]

Obligations Secured by Lien
If Weinberg does not require the taxation of these agreements as unclassified intangible personal property, then we must decide whether, as "obligations for the payment of money," they are taxable based upon the absence or presence of an "other lien." The authorities offered by the majority for finding the one-time two mill tax applicable, which necessitates a finding that the agreements create a lien, are, in my view, completely distinguishable. Gulf American Land held that an agreement for deed is a binding legal obligation, but it did not pass upon the absence or presence of a lien for any purpose. In the Nelson, Jasper and H. & L. Land Co. cases cited by the majority, a buyer was entitled to possession while making installment payments. Equitable conversion was present to create a true vendor's lien by which the seller could recover the property from the buyer. That is not the situation now before us. Possession of relator's lands has never been relinquished,[10] and no artificial legal mechanism ("lien") is required to assure its recovery. The last case cited by the majority, Collier Land, merely quoted from Jasper for the purpose of discussing liens. In that case there was no indication whether possession was given to Collier's customers, and there was no comment on the fact that possessory rights were conferred in Jasper.
*533 Absent any guidance in the cited decisions as to presence or absence of a lien where possession is not relinquished, it is necessary to define the term "lien" and apply the definition to the facts before us. A lien is defined variously for various purposes,[11] but in real property transactions the term invariably means a creditor's charge or claim on property possessed by another.[12]
In the agreements we have under review, relator retains possession until full payment is made. A buyer does not physically acquire the subject property, and it is problematic whether he even holds an enforceable right to acquire it.[13] At most, a buyer acquires something akin to a forfeitable option.
I conclude, therefore, that while relator has legal remedies and rights arising from a binding legal obligation, its own possession of the property, its retention of legal title, and the features of its contract relative to personal liability, assignability and the buyer's right of enforcement, all combine to preclude the creation of a "lien".[14] There being no lien the obligation is taxable at annual one mill rate under Section 199.032(1), Florida Statutes.
NOTES
[1] Section 199.023(1) provides:

"`Intangible personal property' means all personal property which is not in itself intrinsically valuable, but which derives its chief value from that which it represents, including, but not limited to, the following:
(a) Money, including, without limitation, United States legal tender, certificates of deposit, cashier's and certified checks, bills of exchange, drafts, and similar instruments:
1. Held by a taxpayer; or
2. Deposited in or with banks or other corporations, institutions, or persons doing a similar type of business; or
3. Placed with, deposited with, or entrusted as a shareholder to building and loan associations, savings associations, credit unions and similar institutions; or
4. Deposited with or held by any person;
(b) All stocks or shares of incorporated or unincorporated companies, business trusts, and mutual funds;
(c) All beneficial interests of residents in trusts; and
(d) All notes, bonds, and other obligations for the payment of money."
[2] Other of such agreements for deed in the same form, except for the names of purchasers, legal descriptions, purchase price and dates, were executed by Relator for a total value of $73,633.00, of which the agreement for deed set forth below is a part.
[1] Fla. Const. art. V, § 3(b)(5) says that the Supreme Court "may" issue writs of mandamus.
[2] State ex rel. Seaboard Airline R.R. v. Gay, 160 Fla. 445, 35 So.2d 403, 407 (1948).
[3] General Development Corp. v. Dep't of Revenue, Case No. 74-12465 (11th Cir.Ct.Fla. 1974), appeal pending in the Third District Court of Appeal (Docket No. 74-1350). Agreements for deed are not uniform documents. Although most land sales companies structure their agreements to exempt buyers from personal liability beyond a forfeiture of paid installments, they vary the time of granting possession. The Court's ruling in this case was developed against a record having only one form of contract, yet the broad language of the opinion offers no basis for distinguishing other factual patterns.
[4] It is commonly known that agreements for deed are neither recorded nor enforced (in the usual sense of foreclosing on property or commencing legal action in court). In light of the Court's determination that this form of intangible personal property is secured by a form of "lien", however, it would appear consistent to reason that a buyer's default triggers one or more of the remedies available to the seller to enforce that lien. If that is a valid analysis of the legal rights of the parties it would follow that a retention of the buyer's prior payments  the favorite (if not exclusive) remedy available to land companies  constitutes "enforcement" of the agreement. As such, payment of the tax would be due at the time of forfeiture, under Section 199.042(2), Fla. Stat.
[5] The problem of escaping or postponing the tax would not exist if the legislature had used comparable language for "liens" in Sections 199.042(2) and 199.052(7)(a), Fla. Stat. The difference in wording in those sections must be assumed to be purposeful, however, and there is simply no "written specific lien in the nature of a mortgage" in these agreements to allow the imposition of tax at the time of execution. See Section 697.02, Fla. Stat., directing that a mortgage shall be a "specific lien" on property.
[6] Section 199.023(1), Fla. Stat. No one contends the agreements are secured by a mortgage or deed of trust, and all of the agreements are secured, if at all, by real property situated in Florida.
[7] Sections 199.032(1) and (2), Fla. Stat.
[8] 132 So.2d at 762.
[9] The Weinberg decision was distinguished to allow imposition of the documentary stamp tax on agreements for deed in Gulf American Land Corp. v. Green, 149 So.2d 396 (1st Dist.Ct.App.Fla. 1962), cert. denied, 157 So.2d 70 (Fla. 1963). The district court's basis for distinction was a provision in Gulf American's contract extending the benefits of the contract to buyer's heirs, personal representatives, successors and assigns. In the case now under review that distinguishing feature is not present. Relator's agreements for deed not only lack a comparable provision but they expressly negate assignability without relator's written consent.
[10] The sample agreement for deed made a part of the record here states that "buyers shall have possession of property after all payments are made."
[11] See, for example, 25 Words and Phrases 359-66 (Perm.Ed. 1961); Black's Law Dictionary 1072-73 (Rev. 4th Ed. 1968).
[12] A lien either assures recovery of possession or enforcement of the debt. Since relator by contract (1) retained title to the land and all paid installments, and (2) relinquished any contractual right to a default judgment, an enforcement type lien is obviously not involved. In his text on Florida real estate law, Chief Justice Adkins has categorized real property liens as mortgages, mechanics' liens, equitable liens or judgment liens. 4 Adkins, Florida Real Property Law and Procedure, Part XIV (1960). Under each category, it it indicated that possession remains with or is conveyed to the debtor during the pendency of the lien. Id. at pp. 2055 (mortgage), 2103-04 (mechanics' lien), 2157 (equitable lien), 2164 (judgment lien).
[13] The agreement provides that if seller cannot convey good and sufficient title by warranty deed after all payments are made, seller can return the payments and be "released from all obligations" under the contract. Apparently the buyer is not even entitled to receive interest on the moneys he allowed the seller to hold while his installments were current.
[14] If there exists a lien in any sense, it inheres in relator's right to retain the buyer's installment payments. This possessory lien, however, attaches to money already received, and not to future sums the buyer is obliged by contract to pay. Since this lien secures cash and not the buyer's "obligation for payment of money", it affords relator no benefit under Section 199.032(2) Fla. Stat.