155 So.2d 387 (1963)
L.O. HANSEN, as Tax Assessor of Broward County, Florida and Ray E. Green, as Comptroller of the State of Florida, Appellants,
v.
PORT EVERGLADES STEEL CORPORATION, a Florida corporation, and W.H. Meeks, Jr., as Tax Collector of Broward County, Florida, Appellees.
No. 3270.
District Court of Appeal of Florida. Second District.
July 12, 1963.
Ross, Norman & Cory, Ft. Lauderdale, for appellant L.O. Hansen, as Tax Assessor of Broward County.
*388 John U. Lloyd, Ft. Lauderdale, for appellant Ray E. Green, as Comptroller of State of Florida.
Landefeld, Romanik & McMorrough, Hollywood, for appellee Port Everglades Steel Corporation.
Chancey & Chancey, Ft. Lauderdale, for appellee W.H. Meeks, Jr., as Tax Collector of Broward County.
CARROLL, CHARLES, Associate Judge.
The appellee Port Everglades Steel Corporation filed a suit in equity in the circuit court in Broward County against the county tax collector and the assessor and against the state comptroller, seeking a decree declaring immunity of certain personal property (imports) from ad valorem taxation and seeking refund of taxes levied on imports in 1960 and paid under protest.
The facts involved and the plaintiff's contentions based thereon are disclosed by the complaint, as follows:
"5. That a dispute exists between the plaintiff and the defendants as to whether or not the property of the plaintiff assessed by the defendant, L.O. Hansen, was subject to the tangible personal property tax imposed; that the jurisdiction of this Court is invoked by the plaintiff pursuant to Chapter 87, Florida Statutes, pertaining to declaratory decrees, judgments and orders; that the plaintiff alleges that the tangible personal property upon which 1960 taxes were paid under protest, were imports located within the enclosure of Port Everglades in Broward County, Florida, physically situate on open storage areas, on the dock, and in the warehouses owned by the Broward County Port Authority, which said imports were imported into the United States by the plaintiff herein for sale to wholesalers and retailers of said merchandise; that the plaintiff is in doubt as to the existence of the immunity granted to it by the United States Constitution under Article 1, Section 10, Clause 2, and Article 1, Section 8, Clause 3, from an imposition of local ad valorem taxes on imports.

* * * * * *
"7. The plaintiff further alleges that its primary business activity is that of importing merchandise from foreign countries for sale to wholesalers and retailers of such imports; that the plaintiff corporation is the importer of record of all such imports and that all import duties paid to the United States are paid by the plaintiff; that all such imports are received at Port Everglades in Broward County Florida, and that said imports, after unloading and being placed upon the docks, are placed for storage in the public warehouses owned and operated by the Broward County Port Authority and on open storage areas, all within the Port Everglades enclosure; that the plaintiff corporation does not handle, move, or in any way come in physical contact with said imports nor does the said plaintiff corporation have any employees which perform any such functions; that the plaintiff corporation is not a manufacturer, user or consumer of any of such imports.
"8. Plaintiff further alleges that all imports sold by the plaintiff corporation to its customers, are sold in the original package, bundle, wrapper or enclosure in which it is shipped from the foreign port and received by the plaintiff at Port Everglades, Florida; the plaintiff further alleges that shipments received from foreign ports are segregated and not co-mingled with any other shipments received by the plaintiff from foreign ports, even though said shipments may consist of the same or similar merchandise; that title to said imports remains in the plaintiff corporation until the same have been sold and a release has been obtained from the Port Everglades Terminal Company so that the same may be transported from Port Everglades to the purchaser thereof; that the said imported goods, while on the Port property, remains the property of the plaintiff and that the said imports are not changed, altered or broken up in any way from their original form or package, nor are the same used or co-mingled *389 with or become a part of the general mass of property in this state."
The defendants denied the above quoted allegations and presented four affirmative defenses, (1) that plaintiff had failed to exhaust administrative remedies (under § 200.36 Fla. Stat., F.S.A.), (2) that suit was barred because not timely filed (under § 192.21 Fla. Stat., F.S.A.), (3) a contention that plaintiff's right to contest the tax was waived by not filing a return claiming an exemption (under § 200.15, Fla. Stat., F.S.A.) and (4) that a law action to recover the tax, which had been dismissed, was res judicata.
Both the plaintiff and the defendants moved for summary judgment. Defendants' motions were denied. Plaintiff's motion was aided by the affidavit of an officer of the corporation which supported the factual allegations. No opposing affidavit was filed by defendants relating to such facts. Plaintiff's motion was granted, and summary final decree was entered holding that the imports were not subject to the ad valorem tax in question and ordering refund.[1] The tax assessor and state comptroller appealed, and plaintiff filed a cross-assignment contending interest should have been allowed.
On this appeal the appellants have not questioned the facts or contested the chancellor's holding that state taxation of these imports was interdicted by the United States Constitution. The four points briefed and argued by the appellants deal with their four affirmative defenses.
Appellants' first contention, that the law action filed to recover the tax payment was res judicata of the equity suit, is refuted by the record. The two proceedings were filed on the same day. The record shows that when considering motions to dismiss the law action the court took note of the pleadings in both cases and concluded that since each involved the same subject matter they should not both proceed, and dismissed the law action without prejudice or hindrance to proceeding in the equity suit. This is made to appear clearly from the wording of the trial judge's order granting the defendants' motions to dismiss the complaint in the law action.
Appellants' second point deals with its third defense, a contention that failure of *390 the plaintiff to make advance claim of exemption justified the levy of ad valorem taxes on the imports. In rejecting that contention the chancellor did not commit error.
The statutory provision relied on by appellants, § 200.15, Fla. Stat., F.S.A., makes it the duty of the taxpayer in filing a return to disclose and claim exemptions, or have them considered waived for that tax year. While an advance claim of exemption could have been made with reference to the tax involved in the instant case (Cf. Frederick B. Cooper Co. v. Overstreet, Fla.App. 1961, 126 So.2d 744, and Overstreet v. Frederick B. Cooper Co., Fla. 1961, 134 So.2d 225) the chancellor's ruling that it was not indispensable is supportable on the theory relied upon by the appellees that these imports were immune from state ad valorem taxation by virtue of Art. I, Section 10, Clause 2 of the United States Constitution, which reads:
"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection laws * * *."
The Supreme Court of Florida has recognized the distinction between immunity from taxation and an exemption from taxation. See Park-N-Shop, Inc. v. Sparkman, Fla. 1958, 99 So.2d 571. The distinction was stated in 31 Fla.Jur., Taxation § 132, as follows:
"Though the two terms are used interchangeably, a distinction is to be made between `exemption' from taxation and `immunity' from it: the term `exemption' presupposes the existence of a power to tax, whereas the term `immunity' connotes the absence of it."
The statutory provision for claiming exemption has reference to taxable property, and to taxes which the state has the power to impose. Imports are not taxable property in the state, being immune from such taxation under the Federal Constitution. With reference to such immunity the Supreme Court of the United States, in Hooven & Allison Co. v. Evatt, 1945, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252, 1258-1259, said:
"The Constitution confers on Congress the power to lay and collect import duties, Art. I, § 8, and provides that `no State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports except what may be absolutely necessary for executing it's inspection Laws * * *.' Art. I, § 10, cl. 2. These provisions were intended to confer on the national government the exclusive power to tax importations of goods into the United States. That the constitutional prohibition necessarily extends to state taxation of things imported, after their arrival here and so long as they remain imports, sufficiently appears from the language of the constitutional provision itself and its exposition by Chief Justice Marshall in Brown v. Maryland, supra [12 Wheat. 419, 6 L.Ed. 678]. * * *
"It is obvious that if the states were left free to tax things imported after they are introduced into the country and before they are devoted to the use for which they are imported, the purpose of the constitutional prohibition would be defeated. * * * It is evident, too, that if the tax immunity of imports, commanded by the Constitution, is to be reconciled with the right of the states to tax goods after their importation has become complete and they have become a part of the common mass of property within a state, `there must be a point of time when the prohibition ceases, and the power of the state to tax commences.' Brown v. Maryland, supra, 12 Wheat. (U.S.) [419] 441, 6 L.Ed. 678 [686].
* * * * * *
"Although one Justice dissented in Brown v. Maryland, supra, from that *391 day to this, this Court has held, without a dissenting voice, that things imported are imports entitled to the immunity conferred by the Constitution; that that immunity survives their arrival in this country and continues until they are sold, removed from the original package, or put to the use for which they are imported." (Citing numerous authorities.)
Appellants' third point presents a contention that suit could not be maintained to recover the taxes paid, without first exhausting administrative remedies.
Appellants argue that preliminary demand should have been made on the comptroller, under § 200.36 Fla. Stat., F.S.A., which authorizes the comptroller to pass upon and order refunds. The wording of the statute does not support the argument, and appellants' brief contains no authorities on the point. The statute provides for settlement by court action of a dispute between the tax collector and the taxpayer as to liability of the latter for payment of a tax claimed to be due, and for a refund of the tax (such as that ordered in the decree in the instant case) "if it is finally adjudged by a court of competent jurisdiction that the taxpayer was not liable for the payment of the tax or any part thereof." When there is a dispute as to the taxpayer's liability for payment of the tax claimed by the collector to be due, a demand on the comptroller for refund of such tax would be a useless act. Moreover, the statute contemplates that under such circumstances a court determination should precede refund.
Appellants' fourth point is a contention that the suit was not brought within the time allowed by law for the commencement of such litigation. That contention is predicated on the requirement in § 192.21 Fla. Stat., F.S.A. that "no assessment shall be held invalid unless suit be instituted within sixty days from the time the assessment shall become final * * *." This suit was filed after such limited period. That limitation is not applicable to suits in which assessments are charged to be unauthorized and void, which may be enjoined or relieved against at any time. See Hackney v. McKenny, 113 Fla. 176, 151 So. 524; Overstreet v. Ty-Tan, Inc., Fla. 1950, 48 So.2d 158.
There remains for consideration the argument of the appellee Port Everglades Steel Corporation, supported by its cross-assignment of error, that the chancellor committed error in not requiring the payment of interest on the amount paid to the tax collector under protest from the date of payment.
In support of the claim for interest appellee cites 51 Am.Jur., Taxation § 1172, stating the weight of authority favors allowance of interest upon tax refunds even in the absence of an authorizing statute, and appellee cites Florida Livestock Board v. Gladden, Fla. 1956, 86 So.2d 812, where the Supreme Court stated that in an authorized suit against a state agency payment of interest "may be impliedly authorized when the nature of the claim and the object designed in permitting such suits against the state or its agency warrant such implication * * *." We find that authority inapplicable to the instant case. The statute under which the refund is sought here makes no provision for payment of interest. The decree in this suit did not amount to or contain a money judgment. The decision of the Supreme Court of Florida in Mailman v. Green, Fla. 1959, 111 So.2d 267, supports the ruling of the chancellor in denying the plaintiff's claim for interest.
For the reasons stated the decree appealed from is affirmed.
Affirmed.
KANNER, Acting C.J., and ALLEN, J., concur.
NOTES
[1] The summary final decree read in part as follows:

"Whereas, the defendants have admitted they imposed upon such imported steel products a tangible personal property tax assessed as of January 1, 1960 for the year of 1960 in the gross amount of $18,723.11; and
"Whereas, the plaintiff did pay the said tangible personal property tax for 1960 under protest; and
"Whereas, the said imported steel products upon which said tangible personal property tax was imposed were imported from foreign countries by the plaintiff exclusively for the purpose of resale and were held by the plaintiff in the original package, bundle or wrapper in which said imported products had been shipped from the foreign ports; and the Court being otherwise fully advised in the premises, it is therefore
"Ordered, Adjudged and Decreed as follows:
* * * * * * *
"2. That the plaintiff has proved the material allegations of its complaint and is entitled to a declaratory decree in its favor, cancelling and annulling the 1960 tangible personal property tax assessment in the amount of $18,723.11, paid under protest.
* * * * * * *
"4. That the tangible personal property tax assessment for 1960 in the amount of $18,723.11, paid under protest, is hereby declared null and void because the same violates and is repugnant of Article 1, Section 8, Clause 3 and Article 1, Section 10, Clause 2 of the Constitution of the United States.
"5. That pursuant to Florida Statute 200.36, F.S.A., Ray E. Green, as Comptroller of the State of Florida, is hereby ordered and directed to enter an order of refund directing the Board of County Commissioners of Broward County, Florida, to refund to the plaintiff, Port Everglades Steel Corporation, the sum of $18,723.11 and to provide such funds in the County budget for the ensuing year, all as is more particularly set forth in the statute hereinabove referred to."